MARTIN GODFREY, Plaintiff in Error, *v.* THE PEOPLE OF THE STATE OF NEW YORK, Defendants in Error.

Under the statute defining the crime of mayhem (2 R. S., 664, § 27), in order to establish the offence it must be made to appear, by proof of a lying in wait or of some other act of the accused evincing it. that there was a premeditated design on his part to do the act complained of. The existence of such design cannot be found simply from proof of the commission of the act itself.

Where, therefore, the act is done in the heat of a casual and sudden affray without any evidence of premeditation, the case is not brought within the statute.

*Godfrey* v. *The People* (5 Hun, 369) reversed.

(Argued November 10, 1875; decided November 23, 1875.)

ERROR to the General Term of the Supreme Court in the first judicial department, affirming a judgment of the Court of General Sessions, in and for the city and county of New York, entered upon a verdict convicting plaintiff in error of the crime of mayhem. (Reported below, 5 Hun, 359.)

The evidence tended to show that the accused and the complainant had been playing cards together and got into a quarrel over the game, which resulted in a fight. The parties closed and during the struggle the accused bit off a piece of complainant's ear.

At the close of the evidence the counsel for the prisoner requested the court to direct the jury to acquit on the ground, among others, that the offence of mayhem was not proved, as it was not proved that there was a premeditated design "evinced by a lying in wait for the purpose, or in any other manner" as prescribed by the statute. The court refused the request, and counsel for the prisoner duly excepted.

The court charged the jury, among other things, as follows: "If you should be satisfied from the evidence, beyond a reasonable doubt, that the prisoner did willfully and intentionally seize the complainant's left ear with his teeth with the intention of biting it off, and did willfully and intentionally bite it off on purpose, that you will be authorized to find that he bit off the ear from premeditated design, though you should find from the evidence that his design, or intention thus to seize and bite off the ear, was first premeditated or originated but an instant before he seized the ear with his teeth." To this portion of the charge the prisoner's counsel duly excepted.

*Mitchell Laird* for plaintiff in error. The indictment was defective. (2 R. S. [Edmonds, 2d ed.], 683, § 27.) An enactment in its nature declaratory of the common law will be construed, as far as may be, according to the common law. (*Freeman* v. *People,* 4 Den., 9, 29; *Comm.* v. *Humphries,* 7 Mass., 242; *People* v. *Butler,* 16 J. R., 203; 2 Bish. Cr.

Law [3d ed.], § 176; 1 Kent's Com., 464; *People* v. *Goshen Tpke. Co.*, 11 Wend., 596; *People* v. *Mather*, 4 id., 229.) It was necessary to show a premeditated design evinced by lying in wait for the purpose of committing the crime. (*Rex* v. *Gillbrass*, 7 Com. & P., 444; *Rex* v. *Harris*, id., 446; *Rex* v. *St. George*, 9 Car. & P., 483; 1 East Pleas of Crown, 187, 188; *Reg.* v. *Reed*, 23 L. T. R., 156; 28 E. L. and Eq., 133; 1 Bish. Cr. Law, § 275; *Reg.* v. *Whitnash*, 7 B. & C., 596; Smith's Cont., 172; *Rex* v. *Atkinson*, R. & Ry., 78, 104; *Rex* v. *Whitfield*, 1 R. Cr. [Gna. ed.], 728; *Coolidge* v. *Choate*, 11 Metc., 79; *Danforth* v. *Woodward*, 10 id., 423; *Buckingham* v. *Billings*, 13 Mass., 82; *Patten* v. *Shepard*, 4 Conn., 450; *City of Lexington* v. *Lewis*, Alb. L. J., July 17, 1875, p. 34.) The court erred in refusing the motion to direct the jury to acquit the prisoner. (*People* v. *Davis*, 18 How. Pr., 134; 4 Park. Cr., 61; *O'Leary* v. *People*, id., 187; *Ruloff* v. *People*, 18 N. Y., 180; *People* v. *Bennet*, 49 id., 137.)

*Benj. K. Phelps*, district attorney, for the defendants in error. It was not necessary to allege in the indictment the means by which premeditation was evinced. (2 Bish. Cr. Law, 1003.) It was not error for the court to refuse to direct a verdict of acquittal. (*State* v. *Girken*, 1 Ire., 121; *State* v. *Crawford*, 2 Den., 425; *State* v. *Abram*, 10 Ala., 928.)

MILLER, J. The statute under which the plaintiff was indicted and convicted is as follows:

" Every person who, from premeditated design, evinced by laying in wait for the purpose or in any other manner, or with intention to kill or commit any felony, shall (1) cut out or disable the tongue; or, (2) put out an eye; or, (3) slit the lip or slit or destroy the nose; or, (4) cut off or disable any limb or member of another, on purpose, upon conviction thereof shall be punished," etc. (2 R. S., 664, § 27.)

A question is made by the prisoner's counsel whether, as the case stood upon the evidence, the prisoner could be con-

victed of the crime of mayhem. This question was presented upon the trial in the request and refusal to charge that he could not, and by an exception to that portion of the charge in which the judge charged the jury that if they found, from the evidence, that the prisoner willfully and intentionally seized the left ear of the complainant with his teeth, at any time during the affray, with the intention of biting it off, and did willfully and intentionally, and on purpose, bite it off, that though the intention to bite off his ear originated or was first meditated but an instant before he seized the ear, they would be authorized to find that he bit the ear off from "*premeditated*" design, within the meaning of the statute.

According to the statute there must be a premeditated design, which must be shown by lying in wait for the purpose, or in some other manner. There was no evidence upon the trial to establish that the prisoner lay in wait for the complainant, or that, prior to the time of the commission of the alleged offence, he had contemplated or intended to do the act. The proof evinces that it was done upon the impulse of the moment, in an affray which originated unexpectedly, with no previous ill feeling, except what arose at the time, or apparent intention upon the part of the prisoner or the prosecutor to engage in any such altercation as produced the consequences which ensued. There was, then, no premeditated design evinced by lying in wait for such a purpose, within the meaning of the statute, and, under the circumstances presented, it is certainly not clearly apparent how, or in what form, such premeditated design is evinced in " any other manner." The last words are not very explicit, and somewhat general, but they cannot, without a constrained construction be held to mean that they include cases of simple assault and battery where there is no direct proof of any intent or purpose which results unfortunately in the loss or disabling of some member of the body of the person assailed. If such a result should occur in an ordinary affray by accidental circumstances and without any manifest intention, no case would be established within the meaning of the

statute.  There must be a design or intention existing and a purpose to do this very act, and this must be the result of premeditation.  The words cited must be construed in connection with and in reference to those which precede them in the same section; and when thus interpreted they evidently mean in any *like* or *similar manner*.  There are numerous instances where full force and effect may be given to this language where a premeditated design has existed without lying in wait for that purpose, while it would not be applicable to cases where no such intention had been formed or proved.  Take the case of a person who had determined and threatened to cut off an ear, put out an eye or to disable some limb or member of the body of another and preparing himself with the necessary weapon for that purpose should meet the individual against whom his animosity was directed and commit the offence, or if, perchance, when seeing him at a distance he should follow him, suddenly rush upon his victim and carry his intention into execution.  These cases, without referring to others which might be named, are sufficient to show how the language employed could be made effective and have full operation.

This interpretation of the language stated is also sanctioned by the last clause of the section, which provides that the cutting off or disabling of any limb or member must be done " on purpose."  If the offence was committed within the meaning of the statute, it must have been done " on purpose " as well as with a " premeditated design."  There is no real ground for claiming that there was premeditation and a purpose existing at any time during the progress of the conflict when the passions of both parties were aroused and there was no time or opportunity for reflection or deliberation.  Such an assumption would be contrary to the natural inferences to be drawn from the circumstances and the situation of the parties at the time, and looking at them it cannot be fairly claimed that the prisoner intended to commit the offence of which he was convicted.

An argument is made by the learned counsel for the prose-

cution, to the effect that the doctrine of instantaneous malice under the old law of murder is applicable, and that the definition of premeditation, as applied to such a case, may be invoked. I cannot concur in this view. In cases of homicide, where the offence is committed by means of weapons, or by the use of violence sufficient to produce death, such a rule might well be applied, because every circumstance tends to show that the result was intended. But this differs widely from a case of simple assault and battery where there was a hand to hand fight, without any weapon which could be used to maim or disable, and every intendment is against any such purpose.

Another answer to this position is, that the statute of mayhem in England as well as in this State, was evidently intended to provide for cases where there was an antecedent and secret purpose to commit the act, and not for casual and sudden affrays, where the act was done in the heat of the strife and with no direct evidence of any such intention.

It is evident that the offence of mayhem was not made out, and that the judge erred in refusing the request made; and in that portion of the charge referred to. Questions are made as to the form of the indictment as well as to some other rulings on the trial; but the consideration of them is not required, as sufficient already appears to reverse the judgment.

Judgment should be reversed and new trial granted.

All concur.

Judgment reversed.