OWEN TULLY, Plaintiff in Error, *v.* THE PEOPLE OF THE STATE OF NEW YORK, Defendants in Error.

In an indictment for mayhem, premeditated design must be averred; but it is not necessary to state the manner in which the premeditated design was evinced. The circumstances establishing premeditation are matters of evidence and to be proved on the trial.

The distinction between the statute of this State and the English statute defining the offence pointed out.

In an indictment upon a statute it is unnecessary that the words of the statute should be precisely followed, but words of equivalent import or more extensive signification, and which necessarily include the words used, may be substituted.

An indictment for mayhem charged that the accused did "cut, bite, slit and destroy" the thumb of the prosecutor. The offence proved was that the thumb was disabled. The indictment was claimed to be defective, in that it did not allege that the thumb was "disabled" in accordance with the statutory definition of the offence. (2 R. S., 665, § 27.) *Held*, that the word "destroy" was a more comprehensive word than "disable," and includes what is signified by it, and that therefore the indictment was not defective by reason of the substitution.

(Argued June 14, 1876; decided September 19, 1876.)

ERROR to the General Term of the Supreme Court, in the second judicial department, to review judgment affirming judgment of the Court of Oyer and Terminer of the county of Kings, convicting plaintiff in error of the crime of mayhem.

The indictment charged that the plaintiff in error " in and upon one Walter Westlake, in the peace of God and of the people of the State, then and there being, willfully and felo-

niously and with premeditated design, did make an assault, and that the said Owen Tully with the teeth of him, the thumb of him, the said Walter Westlake, then and there willfully and feloniously and from premeditated design, did cut, bite, slit and destroy on purpose, with intent, then and there and thereby, in manner aforesaid, the said Walter Westlake then and there to maim and disfigure, against the form of the statute in such case made and provided," etc.

The evidence tended to show that the prosecutor, Westlake, was riding in a street-car; the accused got into the car, but not paying his fare when called on, was put off by the conductor; he got on again and forced his way into the car, exclaiming as he did so, "Let me in till I eat somebody." After getting in he caught hold of the conductor and bit his thumb. Westlake requesting him to be quiet, as there were ladies in the car, they both sat down. After a few moments the accused sprang up and struck Westlake, and as the latter arose, seized his nose with his teeth; Westlake put up his hand to protect his face, when the accused caught his thumb in his mouth and began to chew it, and continued so to do until he was forced from the car by the other passengers, hanging on to the thumb until he reached the platform. Westlake's thumb was stiffened and permanently disabled.

The counsel for plaintiff in error requested the court to charge the following propositions :

First. " Under the indictment in this case, the defendant cannot be convicted of mayhem, in cutting off or disabling the thumb of the complainant.

Second. " The indictment does not allege that the thumb was cut off or disabled.

Third. " The allegation in the indictment that the thumb was destroyed, is disproved by the evidence, the thumb still being perfect on the hand of the defendant, whether disabled or not.

Fourth. " There is no evidence, in the case, of premeditated intent, such as is called for by the statute defining the crime of mayhem.

Fifth. " The premeditated attempt required by the statute, must be evinced by lying in wait, or some similar means, and no such evidence has been offered in the case.

Sixth. " The indictment in this case is not sufficient as an indictment for mayhem, and is only good as an indictment for assault and battery."

The court declined to charge specifically, as requested, stating as to the first three propositions that the word " destroy," as used in the indictment, necessarily included the word " disabled," and that proof that the thumb was disabled answered the averment, and was sufficient to sustain the indictment ; to which the plaintiff in error, by his counsel, duly excepted.

*Wm. F. Howe* for the plaintiff in error. The indictment was insufficient. It should have followed the precise words of the statute. (3 Just., 118 ; 3 Chit. Cr. Law, 786 ; *Hawkins,* b. 2, c. 23, § 79 ; *Republic* v. *Ricker,* 3 Yeates, 282 ; 2 Bish. on Cr. Proc., §§ 856, 857 ; 1 East P. C., 402 ; *Comm.* v. *Lester,* 2 Va. Cas., 198 ; *Freeman* v. *People,* 4 Den., 9, 29 ; *People* v. *Butler,* 16 J. R., 203 ; *Comm.* v. *Humphries,* 7 Mass., 180 ; *Dedieu* v. *People,* 22 N. Y., 180 ; 2 Bish. Cr. Law [3d ed.], § 176 ; 1 Kent's Com., 464 ; *People* v. *Goshen Tpke. Co.,* 11 Wend., 596 ; *People* v. *Mather,* 4 id., 229 ; *People* v. *Wilber,* 4 Park. Cr., 19 ; *People* v. *Allen,* 5 Den., 76 ; *Wood* v. *People,* 9 Barb., 671 ; *Briggs* v. *People,* 8 id., 547 ; *People* v. *Enoch,* 13 Wend., 172, 173 ; *Wood* v. *People,* 53 N. Y., 51 ; Hale's Pleas of Crown, 628 ; Foster's Cr. Law, 423 ; 1 Rus. on Crimes, 686 ; Barb. Cr. Law, 73, 332 ; *Enright* v. *People,* 21 How. Pr., 383 ; *People* v. *Davis,* 18 id., 134 ; *O'Leary* v. *People,* 4 Park. Cr., 187 ; *Fellinger* v. *People,* 15 Abb. Pr., 128 ; 24 How. Pr., 341,) The defects in the indictment could not be supplied by evidence or cured by a verdict. (*Ruloff* v. *People,* 18 N. Y., 180 ; *People* v. *Davis,* 18 How. Pr., 134.)

*Thomas S. Moore* for the defendants in error. The indictment was sufficient to sustain a conviction for mayhem. (2 Stat. at L., § 27 ; 2 R. S., 664 ; *Lehman* v. *People,* 1 N. Y.,

383 ; *Dawson* v. *People*, 25 id., 399 ; *Rex* v. *Jones*, 2 B. & Ad., 611 ; *Dedieu* v. *People*, 22 N. Y., 183 ; *Sanchez* v. *People*, id., 149 ; *People* v. *Powers*, 6 id., 50 ; *People* v. *Stockham*, 1 Park., 454 ; *Fraser* v. *People*, 54 Barb., 306 ; *Briggs* v. *People*, 8 id., 546 ; *Thomson* v. *People*, 3 Park. Cr., 208; *Godfrey* v. *People*, 5 Hun, 376.)

ANDREWS, J. The offence of mayhem is defined by the statute as follows : " Every person who, from premeditated design, evinced by lying in wait for the. purpose, or in any other manner, or with intention to kill or commit any felony, shall (1) cut out or disable the tongue ; or (2) put out an eye ; or (3) slit the lip or destroy the nose ; or (4) cut off or disable any limb or member of another on purpose, on conviction thereof, shall be imprisoned, etc." (2 R. S., 665, § 27.)

The prisoner was convicted under this statute for disabling the thumb of the prosecutor by biting. The parties at the time of the injury were in a street car in Brooklyn. The prisoner caught the thumb of the prosecutor between his teeth, and held it there for some moments, meanwhile biting through and separating the joint, thereby permanently stiffening and disabling it. The indictment charges that the prisoner (Tully) " with force and arms in and upon one Walter Westlake, willfully and feloniously, and with premeditated design did make an assault, and that the said Owen Tully with the teeth of him, the thumb of him the said Walter Westlake, then and there willfully and feloniously, and with premeditated design, did cut, bite, slit, and destroy on purpose, with intent, etc., to maim, and disfigure," etc.

It is insisted that the indictment is defective in not averring the manner in which the premeditated design was evinced. This was unnecessary. The offence is complete whenever a person having formed a design to maim another, proceeds to, and does execute it. The jury must find as a fact, before there can be a conviction, that there was a premeditated design to maim, and it must be averred in the indictment. But the manner in which this design was evinced, and the circumstances

establishing it are matters of evidence to be proved on the trial. The issuable fact on this branch of the case is whether the particular injury was deliberately and intentionally committed. The conduct of the accused before and at the time of the transaction, the preparation made, and his lying in wait, his threats and declarations tending to show his intention in making the assault, with many other facts and circumstances which might be suggested, may be given in evidence upon the issue of premeditation, but it would be improper, and often impracticable, to spread them out in the indictment. The learned counsel for the prisoner in insisting upon this point, has been misled by a supposed analogy, in indictments under our statute, and under the statute 22 and 23 Caroline II, chapter 1. That statute is, " that if any person shall on purpose, and of malice aforethought, by lying in wait," etc., do any of the acts specified, he shall be guilty of mayhem. It was held, that an indictment under this statute must aver a lying in wait (3 Chitty Cr. Law, 786), and for the reason manifestly that without the averment, no crime under the statute would be charged. It made the maiming of another an offence only when there was premeditation evinced in a particular manner, viz., " by lying in wait." The reason for the decision under the English statute has no application to indictments under our statute. The intention of our statute was to enlarge the definition of the offence, and to include within it all cases of designed and premeditated maiming, and the words " or in any other manner," were inserted for that purpose.

The indictment is also claimed to be defective for the reason that it does not allege that the prosecutor's thumb was " disabled." The fourth specification of the statute is, " or shall cut off or disable any limb or member," and the indictment charges that the prisoner did " cut, bite, slit and destroy," the thumb of the prosecutor. It is a well-settled rule of criminal pleading that an indictment upon a statute must state all the facts and circumstances which constitute the statutory offence, but it is not necessary that the words of the statute should be precisely followed. Words of equivalent import may be sub-

stituted, or words of more extensive signification, and which necessarily include the words used in the statute. The decisions are by no means uniform on the subject, and elsewhere great particularity has been required in framing indictments upon statutes, and in some cases it has been held that the precise language of the statute must be used. But the rule in this State is in conformity with the more liberal doctrine above stated. (*People* v. *Enoch*, 13 Wend., 172; *People* v. *Holbrook*, 13 J. R., 90; *People* v. *Rynders*, 12 Wend., 427; *Fraser* v. *People*, 54 Barb., 306; *People* v. *Thompson*, 3 Park., 208; see also Wharton's Crim. Law, vol. 1, § 376; *Rex* v. *Fuller*, 1 B. & P., 180; *State* v. *Little*, 1 Vt., 534; *State* v. *Hickman*, 3 Halsted, 299; *United States* v. *Bachelder*, 2 Gall., 15; *State* v. *Keen*, 34 Me., 500.) The word "destroy" used in the indictment is more comprehensive than the word "disable," and includes what is signified by it, and the indictment is not defective by reason of the substitution.

We are also of opinion that the evidence warranted the submission to the jury of the question whether the prisoner, by premeditated design, inflicted the injury complained of. It is quite clear that there may be a maiming, resulting from an unlawful assault which could not be punished under the statute in question. The maiming must be the result of premeditation and design, and it has been recently decided in this court in *Godfrey* v. *The People* (63 N. Y., 207), that the design must precede the conflict, and not originate with, and grow out of it. But in general the question whether there was premeditation will be one of fact for the jury, and not of law for the court. There are circumstances, we think, in this case from which the jury might have inferred that during the interval between the time the prosecutor first addressed the prisoner and the time when the prisoner commenced the affray, a space of several minutes, he formed the intention to inflict the injury which followed. The case is not without evidence bearing upon that question, and it was carefully submitted to the jury with instructions upon the law, quite as favorable to the prisoner as he was entitled to.

We think there was no error in any of the rulings on the trial, and that the judgment of the General Term should be affirmed.

All concur.

Judgment affirmed.