EARL PARKER and W. M. PRINGLE v. STATE.

169 So. 411.
Division B.
Opinion Filed July 9, 1936.

*R. B. Moseley,* for Plaintiffs in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant Attorney General, for the State.

BUFORD, J.—The writ of error in this case brings for review judgment of conviction of the offense denounced by Section 5240 R. G. S., 7359 C. G. L., under an information charging that the defendants and another did in Duval County on the date named "then and there willfully and maliciously maim and disfigure a steer of the property, goods and chattels of one Alec Bell by shooting the said steer with a shot gun."

The plaintiff in error presents three questions for our consideration. The first question stated is:

"Where a person has knowledge that his property is going to be stolen, and he sends his agents to urge, co-operate with, and assist the accused in the taking of his property, and in the attempt to commit the larceny the accused and the agent of the owner maims and disfigures an animal of the owner in such attempt to commit larceny, can the accused be convicted of 'willfully and maliciously maiming and disfiguring' said animal?"

The evidence shows that Alec Bell owned some cattle in Duval County; that he had been missing some cattle and believed the same to have been stolen. Andrew Bell, son of

Alec Bell, was in charge of Alec Bell's cattle. Owen Bell Deese, a nephew of W. J. Bell, who was also a son of Alec Bell, went to W. J. Bell and reported that Morris Pringle had approached him, suggesting that they steal some cattle and that when Pringle approached Deese the second time in regard to stealing some cattle Deese told Pringle that he would go with him to steal some cows out of his (Deese's) uncle's pasture. Deese then went to his uncle, Andrew Bell, and told him of the plan. His uncle told him to go ahead. So the record shows that on the day of the alleged offense Deese got with Morris Pringle, Earl Parker and Sidney Gibbs and they went to the pasture of Andrew Bell intending to steal the steer. Morris Pringle shot the steer but the shot was too small to kill it. The steer fell to its knees when it was shot but jumped up and ran away. The steer was found by Andrew Bell that day wounded, with both eyes shot out and bleeding from the nose. Andrew Bell testified that he sent Deese with Pringle and the other defendants for the purpose of procuring evidence against them. There is no credible testimony that Deese persuaded Pringle and the others to commit the crime.

The evidence supports the theory that Deese entered into the conspiracy with Pringle and others for the purpose of procuring evidence which it was hoped would stop the depredations on the cattle of Bell and would result in the conviction of cattle thieves.

In this case the record would not warrant an acquittal on the theory of entrapment.

Questions 2 and 3 are as follows:

"If the accused in this case committed any crime whatsoever, was it not the crime of 'willfully or wantonly and

without malice towards the owner' maiming or disfiguring the animal, as provided under Section 7360 C. G. L., 1927?

"Where the evidence shows that there was no malice on the part of the accused towards the owner of animals and the evidence further shows that the owner thereof was willing for such act to be committed and prepared his property, co-operated with, and assisted the accused in the commission of such act, was not the criminal quality under Section 7359 C. G. L., 1927, to-wit: 'the willfulness and malice,' wanting?"

The contention under these two questions is that for one to be convicted under Section 5240 R. G. S., 7359 C. G. L., the evidence must show not only a maiming of the animal but must show that it was done because of some ill will toward the owner of the animal. This conviction is probably well founded, but, admitting that it is true, the evidence here is sufficient to sustain a conviction under that construction because it is affirmatively shown that the act was done with the intent to deprive the owner of his property. The malice which is incident to the larceny is the intent to wrongfully deprive the owner of his property and it was that kind of malice which the defendants are shown to have entertained at the time the unlawful act was committed and which caused them to commit the unlawful act.

The evidence shows that the defendant Parker borrowed a shot gun and went with Pringle for the purpose of killing and stealing a steer; that Pringle in the presence of Parker shot the steer with the shot gun borrowed by Parker and delivered to him for that purpose. That the shot resulted in wounding and maiming the steer instead of killing it was merely an incident, but was the result of the malicious, willful and unlawful act of which both were equally guilty.

It is contended here in the brief that the court committed

error in overruling the fourth ground of defendant's motion for new trial which was as follows:

"The guilt of the defendant, Sidney Gibbs, was as much, if not more, demonstrated by the evidence upon which the prosecution relied for conviction than was that for the defendant, Earl Parker, and W. M. Pringle."

Plaintiff in error relies on what was said in the opinion in the case of Courson v. State, 113 Fla. 123, 151 Sou. 383, where this Court said:

"A careful study of the record has convinced a majority of the Supreme Court that, in view of the jury's acquittal of Higginbotham, the guard, whose guilt was as much, if not more demonstrated by the evidence upon which the prosecution relied for conviction, than is that of Courson, the captain, who was found guilty, the ends of justice will be best subserved by awarding Courson a new trial, where his case can be considered by another jury in the light of the charge made in the indictment as it will stand against Courson alone upon remand of the cause for further proceedings to be had in the criminal court of record on a charge of manslaughter."

The difference between the case now before us and that of Courson v. State, *supra*, is that a majority of the Court in the Courson case were not satisfied that the evidence was sufficient to prove the guilt of Courson and apprehended that he was convicted because of considerations or influences outside of the evidence and it was thought that the acquittal of Higginbotham was an indication of that condition. While in this case we have no doubt of the sufficiency of the evidence to sustain the verdict and judgment. The question which comes to our mind in this case is not why Parker and Pringle should have been convicted under the evidence, but why was Gibbs acquitted under evidence which was en-

tirely sufficient to have warranted his conviction along with. that of Parker and Pringle.

We find no reversible error disclosed by the record and, therefore, the judgment should be affirmed.

It is so ordered.

Affirmed.

WHITFIELD, C. J., and TERRELL, J., concur.

BROWN, J., concurs specially.

ELLIS, P. J., and DAVIS, J., dissent.

BROWN, J. (concurring).—Under the evidence in this case, the defendant could have been convicted under either Section 7359 or Section 7360, Comp. Gen. Laws of 1920. The prosecution in this case was under Section 7359 which makes it a criminal offense to "willfully and maliciously" kill, maim or disfigure any horse, cattle or other beast of another person.

Section 7360 makes it a criminal offense to "willfully and wantonly and without malice toward the owner," kill, maim or disfigure any of such animals.

The word "maliciously" as used in Section 7359 C. G. L., does not appear to have been construed by this court, but we have construed that word as used in a kindred statute, Section 7426 C. G. L., which was Section 5305, Rev. Gen. Stats. of 1920, provides that: "Whoever willfully and maliciously destroys or injures the personal property of another, in any manner or by any means not particularly described in these Comp. General Laws, shall be punished by imprisonment not exceeding twelve months, or by fine not exceeding one thousand dollars," etc. This statute was construed by this court in the case of Williams v. State, 92 Fla. 648, 109 So. 805. In that case the defendant together with several of his negro employees was going along the road in his car. The Ford car described in the indictment

was parked along the road in such manner that other cars could have passed, and had passed around it. For some reason, best known to the defendant, he stopped his car, and, together with the assistance of his employees, overturned the Ford car into a ditch alongside the road and in that manner caused the injury as alleged. It was not shown that he knew the owner of the car. In the opinion in that case, which was written for this court by Circuit Judge Chillingworth, it was said:

"The defendant contends that the evidence does not disclose that the act was willful or malicious. 'Willful' simply means intentional; 'malicious', as used in the statute, means nothing more than that the wrongful act should be done voluntarily, unlawfully and without excuse or justification. United States v. Gunther, 5 Dak. 234, 38 N. W. Rep. 79, 80. We believe that the evidence clearly shows that the defendant did willfully and maliciously, without any excuse or justification, turn over the car, and thus injure it as alleged in the indictment, to an amount in excess of fifteen dollars."

See also Heron v. State, 22 Fla. 86, where the plaintiff in error had been indicted for willfully and maliciously burning a pile of lumber. In that case it was held that the destruction and malice may be proven by circumstantial evidence satisfactory to the jury. See also 38 C. J. 345-347, 359. In its legal sense, the term malice has been frequently said to denote a "wrongful act done intentionally without just cause or excuse." 38 C. J. 348-351, citing a large number of cases. The same work defines "express malice" as follows: "A term used sometimes to denominate actual malice or malice in fact, meaning malice existing as a matter of fact; a deliberate intention to commit injury evidenced by external circumstances; a specific desire to vex

or injure another from malevolence or motives of ill will. The term implies personal hatred or ill will or wanton disregard of civil obligations." It was in this sense that the word "maliciously" was used in the arson statute. Love v. State, 107 Fla. 376, 144 So. 843.

The word "maliciously" as used in Section 7359 is evidently used in the same sense as the same word was used in Section 7426 C. G. L., which was construed in the case of Williams v. State, *supra,* above quoted from. Both statutes belong to the same family, springing from the common law offense of "malicious mischief." So construed I concur with Mr. Justice BUFORD that the conviction in this case should be affirmed.

WHITFIELD, C. J., and BUFORD, J., concur.

DAVIS, J. (dissenting).—Section 7359 C. G. L., 5241 R. G. S., undertakes to punish as a felonious act the unlawful injury and cruelty to animals by any one who "willfully and maliciously kills, maims or disfigures any * * * cattle * * * another person."

The evidence in this case shows nothing more than a frustrated effort on the part of the plaintiffs in error to commit the crime of "attempt at larceny of a domestic animal" which could have been indicted and punished under Section 7544 C. G. L., 5403 R. G. S., but was not. See: Section 7234 C. G. L., 5133 R. G. S., for the substantive offense of cattle stealing.

The evidence shows that there was no malice on the part of the accused toward either the animal shot or its owner, but that on July 10, 1935, one of the accused, Morris Pringle, in an effort to steal a steer belonging to one Alec Bell, shot such steer with a shot gun loaded with shot so small as to be ineffective in killing it. After being shot the steer fell to its knees but was able to get up and escape into the

woods before the accused and his companions could successfully manucapt it in their effort to steal it from its owner, according to the theory of the state's case.

Later in the evening the steer was found lying in the swamp where it had escaped after being shot. It was lying down, bleeding about the face and blinded in both eyes by the shots fired at it earlier that day. But all its injuries were occasioned in an effort to kill it and appropriate it to the use of the accused.

Under the circumstances the accused, who have been found guilty of the most reprehensible conduct just described, are no doubt subject to punishment for the crime of felonious attempt at cattle stealing under Sections 7544 C. G. L., 5403 R. G. S., 7234 C. G. L., 5133 R. G. S. But it requires such a complete distortion of all the settled rules of law requiring the strict construction of criminal statutes to hold that the defendants below can lawfully be convicted under Section 7359 C. G. L., 5241 R. G. S., for willful and malicious disfigurement of an animal merely because their shooting with intent to kill the steer to steal it was incomplete in accomplishing the animal's death and manucaption, although it did result in disfiguring and wounding it as it escaped into the woods whence it fled, being fired upon, that I am unable to concur in the opinion favoring affirmance of the judgment.

Courts cannot uphold convictions in criminal cases merely because they are convinced that the particular accused should be punished for a wantonly unlawful act shown by the evidence. The crime committed, to be punishable *coram judice,* must be properly laid in an information or indictment and thereupon sustained by proof applicable to the specific charge set forth in the formal accusation made.

Because I cannot accept the reasoning that has been ad-

vanced in support of affirmance, I must accordingly dissent for the reasons heretofore stated by me in this opinion.

My view is that under Section 7359 C. G. L., *supra,* a conviction for willfully and maliciously maiming or disfiguring an animal cannot be sustained absent a showing of some express malice toward the animal or its owner as the occasion for the maiming, disfiguring, etc. The fact that in an attempt to shoot and steal an animal it is incidentally, but not from any sense of ill will toward the animal itself or its owner, maimed or disfigured by shots fired at it by a would be thief, is insufficient to make out a case of violating Section 7359 C. G. L., *supra,* which plainly contemplates that there must be the specific element of malice and willfulness in the act of shooting for the purpose of gratifying the feeling of malice entertained.

ELLIS, P. J., concurs.