# Richmond

LEO M. SEAY v. COMMONWEALTH OF VIRGINIA.

March 4, 1946.

Record No. 3084.

Present, All the Justices.

The opinion states the case.

*Sam B. Witt, Jr.,* and *Hiram M. Smith,* for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *V. P. Randolph, Jr., Assistant Attorney General,* for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

This writ of error brings under review the proceedings in a trial wherein Leo M. Seay was convicted of the unlawful sale of gin and fined $100 and sentenced to jail for 60 days.

The only assignment of error is that the evidence is insufficient to sustain the judgment of conviction.

The case was tried by the judge of the Hustings Court without a jury. Only one witness, J. L. Blackburn, testified for the Commonwealth. He stated that he was an investigator for the Virginia Alcoholic Beverage Control Board. On June 7, 1945, he and an "informer" went to the Turf Club at 826 West Broad street, Richmond, Virginia. He joined the club on the recommendation of the "informer". While there, he and the "informer" were served 8 drinks of gin by Leo M. Seay, Ashby Duke, John Valentine and Julius Coleman, for which he paid, as served, $1.50 to each of the four parties. Blackburn returned to the club on June 10 and bought two drinks, for which he paid Seay $1.50. On June 15, he went back to the club and tried to buy a drink from Leo Seay, who refused to sell.

On the trial before the police justice, Seay was convicted for the two alleged sales on June 7 and June 10, respectively. Coleman, Valentine and Ashby were convicted for illegal sales on June 7, 1945. On appeal to the Hustings Court, the five cases were heard together and, on the same evidence, Coleman, Valentine and Ashby were acquitted of all charges against them. Seay was acquitted of the alleged sale on

June 10 and convicted of the alleged sale on June 7, as heretofore stated.

The situation is unusual. Blackburn's testimony, if believed at all, convicts Leo Seay of two separate and distinct violations of law and convicts each of the other three named parties of illegal sales of gin. There is nothing in the transcript of the testimony which distinguishes one of the five alleged sales from the others, nor is there anything which tends to support the veracity of Blackburn's statements regarding one sale more than any of the others.

It appears that, on cross-examination, Blackburn refused to give the name of the "informer" until compelled to do so by the trial court. He admitted that the "informer" was paid by the Virginia Alcoholic Beverage Control Board; yet the "informer" was not summoned as a witness and Blackburn stated that he did not know his address or his whereabouts at the time of the trial. Blackburn testified, before the police justice, that, on each of the occasions mentioned by him, he had been served drinks of whiskey by the four parties named, but, in the Hustings Court, he stated that gin, and not whiskey, was served him. He offered no explanation as to this discrepancy in his testimony.

The testimony for the accused is that Leo Seay is the manager of the Turf Club, which is composed of persons of good reputation in the city; that membership can be obtained only by the recommendation of some member and the payment of dues; that the club furnishes for its members and guests facilities for social purposes, such as booths, tables and a bar; that sandwiches, snacks and soft drinks are served; that members have drinks prepared for them from intoxicants furnished by them; that a flat service charge of 20 cents per drink, regardless of the kind of mixed drink served, is made; that the club has 30 lockers for the use of members if they desire to leave liquor on the premises; and that there is a key to each locker, which is furnished the member.

Blackburn, under the name of William E. Dowdy, had joined the club. On June 7, he and his friend carried a fifth of a gallon of legal whiskey to the club and obtained a

locker and key. Drinks were prepared for Blackburn and his companion from this bottle. On June 10, Blackburn again was served two drinks from his own bottle. for which he paid the usual service charge. On June 15, Blackburn again visited the club and begged the accused to let him have some whiskey. The accused refused and stated that he, Blackburn, had some whiskey in his locker. Blackburn said that he did not have the key with him. The accused still refused to give him a drink and, while they were discussing the matter, T. B. Duggan came in with warrants charging the parties with unlawful sales on previous occasions. The accused told Duggan that he had not sold Blackburn any whiskey at any time, and that Blackburn had a locker with whiskey in it. He offered to break the locker open and show him the whiskey. Duggan left, refusing to witness the opening of the locker. The locker was broken open in the presence of W. B. Gentry, the justice of the peace who had been called to issue the warrants. There was found in the locker a bottle with a tag on which was written the names of Bew and Dowdy. The quantity of whiskey remaining in the bottle indicates that about ten moderate drinks had been served therefrom. The bottle with the tag was introduced in evidence in both the police court and the trial court.

The other defendants testified that they had not sold Blackburn any whiskey at any time, but that they had served him drinks out of his own bottle and he had paid the usual service charge.

Blackburn further stated that Seay refused to sell him whiskey on June 15 because, about an hour before, Seay had seen him talking to T. B. Duggan, who was known to Seay to be an investigator of the Virginia Alcoholic Beverage Control Board. This statement was gratuitously interjected into the testimony and was merely an attempt by the witness to strengthen his own position.

[•] The Attorney General contends that the credibility of a witness who makes inconsistent statements on the stand is a question for the jury, or for the trial court as a trier of fact

sitting without a jury. This principle is firmly imbedded in the law of this jurisdiction. It was applied in the recent case of *Atlantic Greyhound Corp.* v. *Shelton, ante,* p. 684, 36 S. E. (2d) 625. While we do not intend to curtail or modify this principle in any particular, we think public policy requires the application of other principles to the peculiar facts of the present case.

1. The Virginia Alcoholic Beverage Control Board, in the performance of its duties, sent an investigator, J. L. Blackburn, and a paid companion to the Turf Club for the avowed purpose of obtaining evidence of· the unlawful sale of intoxicants. The investigator deliberately withheld the name of the paid companion in the police court and in the trial court until the trial judge compelled him to disclose the name. But the name was disclosed in such a manner and at such a time that this companion could not be summoned as a witness.

2. Blackburn seems to have been what is commonly known as a "swift" witness—that is, he changed his testimony two or three times in an apparent attempt to strengthen the case for the Commonwealth. T. B. Duggan, who is said to be a well known investigator for the Virginia Alcoholic Beverage Control Board, declined to obtain all the pertinent evidence in the case by his refusal to examine the locker when requested to do so by the accused. The record discloses that he was present at the trial of the accused and was not called as a witness to corroborate or deny the statements of other witnesses, although the record indicates that his testimony would have been pertinent in certain particulars.

3. Four charges were dismissed and one charge was sustained on the same testimony. Such decisions are inconsistent.

Under the circumstances disclosed, we are not satisfied that the accused has had that fair and impartial trial the law secures to him.

For these reasons, the judgment is reversed and the case

is remanded for such further proceedings as the Commonwealth may be advised.

*Reversed and remanded.*

EGGLESTON, J., dissenting.

I cannot agree with the majority opinion in this case. While the argument is made in the petition that the testimony of J. L. Blackburn, the only witness for the Commonwealth, is unworthy of belief, the majority opinion does not adopt that view. The opinion does point out that Blackburn testified in the police court that the accused sold him "whiskey," and in the Hustings Court that the accused sold him "gin." Again, it is said that on cross-examination "Blackburn refused to give the name of the 'informer' until compelled to do so by the trial court." But, these incidents, of course, merely go to the credibility of the witness and do not render his testimony inherently incredible. Indeed, the majority opinion recognizes and adheres to this principle.

As I understand it, the majority opinion holds that the judgment of conviction against Seay, the plaintiff in error, should be reversed and the case "remanded for such further proceedings as the Commonwealth be advised," which is a plain suggestion that the prosecution should be dismissed, because the trial court, sitting as a jury, convicted Seay and acquitted his co-defendants upon the "same testimony" offered by the Commonwealth.

Assuming that the evidence against each co-defendant was the "same," an examination of the authorities will disclose that the result arrived at here is not at all "unusual," but is of frequent occurrence.

In Wharton's Criminal Pleading & Practice, 9th Ed., section 314, p. 214, the author says: "In an indictment against two or more, when the charge is several as well as joint, the conviction is several; so that if one is found guilty, judgment may be rendered against him, although one or more may be acquitted. To this rule there are exceptions, as in

the case of conspiracy or riot, to which the agency of two or more is essential; but violations of the license law, not being within the reasons of these exceptions, come under the general rule."

This rule was applied in the recent case of *Commonwealth* v. *Mannos*, 311 Mass. 94, 40 N. E. (2d) 291, 299.

The same principle is embodied in our statute. Code, section 4924, provides: "When two or more persons are charged and tried jointly, the jury may render a verdict as to any of them as to whom they agree. Whereupon judgment shall be entered according to the verdict; and as to the others, the case shall be tried by another jury."

In *Dunn* v. *United States*, 284 U. S. 390, 393, 52 S. Ct. 189, 190, 76 L. Ed. 356, 80 A. L. R. 161, Mr. Justice Holmes said: "Consistency in the verdict is not necessary" to its validity.

There are numerous cases which hold that where several persons are jointly indicted and tried for an offense which does not require in its commission the joint act of the defendants, a verdict of guilty may be sustained against some, although, under the same evidence, one of more of the co-defendants may have been acquitted. Such convictions are sustained upon the principle that the true test is whether the evidence sustains the judgment of conviction. and not whether other defendants, equally guilty, may have been acquitted.

In *American Medical Ass'n* v. *United States*, 130 F. (2d) 233 (affd. 317 U. S. 519, 63 S. Ct. 326, 87 L. Ed. 434), a new trial was sought on the ground, among others, that the verdict finding some joint defendants guilty, and acquitting others, on identical testimony, was so inconsistent as to require a reversal of the judgment against those defendants who were convicted. In disposing of this contention, the Court of Appeals of the District of Columbia said (130 F. (2d), at page 252): "It has been held many times that inconsistency in verdicts does not require the result contended for by appellants. And this is true even though the inconsistency

can be explained by no rational consideration. *The question facing us is whether the convictions are consistent with the evidence.*" (Italics supplied.)

In *People* v. *Carp*, 180 Ill. App. 673, three defendants were prosecuted jointly for violating a statute prohibiting the use of a corporate name by a group which had not been duly incorporated. The evidence against the three defendants was identical and consisted mainly of an advertisement. None of the defendants offered any evidence. The jury convicted two of the defendants and acquitted the third. The appellate court held that since the evidence showed a clear violation of the statute, the conviction must be sustained, notwithstanding the acquittal of one of the co-defendants.

In *State* v. *Rush*, 129 S. C. 43, 123 S. E. 765, three defendants were indicted jointly for the illegal manufacture of whiskey. The State's evidence against each was the same. One defendant was acquitted and two were convicted and appealed, claiming that the verdict against them should be set aside for "inconsistency." The court said (123 S. E., at page 766):

"In such a case, even where the evidence as to all the defendants is the same, we know of no sound reason or principle of law, applicable to criminal trials in this jurisdiction, which would necessarily require that a verdict acquitting one and convicting others should be set aside. Assuming that there was evidence sufficient to convict, and that it was identically the same as to the guilt of each defendant jointly indicted, because the jury, in the exercise of their exclusive prerogative to decide the facts, see fit to acquit one and convict the others, it is not apparent why such a finding should impose any duty on the court to set aside the verdict as to the parties convicted. * * * "

In *Parker* v. *State*, 124 Fla. 780, 169 So. 411, three defendants were tried under an information charging them with wilfully and maliciously maiming a steer. The evidence for the prosecution showed that all three were involved in a plot to steal cattle, and that all three were present when one

of the defendants fired the shot which wounded the animal. One of the defendants was acquitted and the other two were convicted. It was held that where there was no doubt as to the sufficiency of the evidence to sustain the conviction, the acquittal of one of the defendants did not entitle the others to a new trial. The court said (169 So., at page 413): "The question which comes to our mind in this case is not why Parker and Pringle should have been convicted under the evidence, but why was Gibbs acquitted under evidence which was entirely sufficient to have warranted his conviction along with that of Parker and Pringle."

See also, *Jones v. State*, 16 Ala. App. 477, 79 So. 151; *Easterling v. State*, 12 Ga. App. 690, 78 S. E. 140.

The case before us is even stronger than those just cited. Here Seay and his three employees were not charged with the commission of a joint offense. Each was charged in a separate warrant with the commission of a separate offense. Blackburn, the Commonwealth's principal witness, testified that each of them sold him intoxicating liquor on a specified date. Each of the defendants denied the charge. It is true that there is nothing in the printed testimony to show why the trial court should have convicted Seay and acquitted the other defendants. But the court saw the four defendants and observed their demeanor on the stand. It may have been impressed by the denial of the three who were acquitted, and not impressed by the denial of Seay who was convicted. The observance of a witness while testifying is one of the peculiar functions of the fact-finding body. Frequently it is the controlling means by which a jury or a trial court determines which witnesses are telling the truth and which are not.

If these cases had been tried separately, on identical testimony, the fact that a different result had been reached in the Seay case from that in the others would not, of course, have entitled Seay to a new trial. As Judge Keith said in *Allen v. Commonwealth*, 114 Va. 826, 840. 77 S. E. 66, "The question before us is, were the accused guilty of the

offense with which they were charged; were they tried in accordance with the law of the land, and does the evidence support the verdict of the jury? It does not concern us that in other cases other juries inflicted a milder punishment upon substantially the same state of facts."

In my opinion, the fact that the cases were tried together, and not separately, does not alter the principle. Because the trial court may have erred in acquitting the other defendants is no reason why this court should make the same mistake and acquit Seay.

I would affirm the judgment of the lower court.