UNITED STATES, Defendant in Error, *v.* GUNTHER, Plaintiff in·
Error.

1. **Mayhem—Premeditation not Necessary—Evidence—Instruc--**
   **tions.**

   Under 'R. S. U. S. § 5348, against malicious mayhem, it is not neces--
   sary to prove premeditated design in order to constitute the offense,. .
   and a request to charge that, in order to convict, the jury must find that
   at the time the defendant did the act he had a premeditated design or·
   intention to do it, was properly refused.

2. **Same—Indictment—Sufficiency.**

   . An indictment, under R. S. U. S. § 5348, against mayhem, which charges·
   the offense in the language of the statute, is sufficient.  It need not
   state, "that by reason and means of the facts alleged therein said pros-
   ecutor was maimed and disfigured."

(Argued February 15, 1888; reversed February 15; opinion filed May 10,
1888.)

Error to district court, Sixth judicial district; Hon. W. H. Francis, Judge.

*J. C. Hollembaek,* for plaintiff in error.

The uncontradicted testimony in the case shows that on the 22d day of September, 1886, the defendant was first sergeant of troop D, Seventh United States Cavalry, stationed at Fort Yates; that the complainant was at the same time a private in said troop; that on said 22d of September, defendant received orders to arrest the complainant, and confine him for an infraction of military rules; that he went to complainant's quarters for the purpose of arresting him in obedience to said orders; that complainant disobeyed the defendant's orders, and resisted his attempt to arrest him; that an affray then and there occurred between complainant and defendant; during which the complainant received injuries which resulted in the loss of his left eye.

The evidence in the case fails utterly to show that the defendant intended or designed to strike or kick complainant in his eye, or that he threatened, designed, or intended to put out the complainant's eye, or to maim or disfigure him; but the uncontradicted evidence in the case does show that the defendant did not, in striking complainant, aim at his eye, or any particular part of his person.

The uncontradicted testimony shows conclusively that when the defendant went to the complainant's quarters to arrest and confine him, he was acting in obedience to orders, and in the strict line of his duty.

It is manifest, from a consideration of all the testimony in the case, that the above claim is fully warranted; and the fact that defendant was, at the time he sought the complainant in his quarters, acting not only within the line of his duty but in obedience to the imperative requirements of orders delivered to him by competent superior authority, rebuts any presumptions that may be invoked that he was a trespasser upon the rights of com-

plainant, or that he therefore became liable for the consequences flowing from such unlawful invasion.

Conceding that defendant went to complainant's quarters for a lawful and proper purpose, and that he was authorized to make such visit, the question finally presented upon this branch of the case is wheth'er he, (defendant,) being lawfully there, formed any design or intent to maim or disfigure complainant.

We insist that, not only is the case barren of facts warranting such conclusion, but it affirmatively appears on the part of the defendant that no such purpose, design, or intent existed at the time he struck the complainant.

We concede the assault, but we deny that a presumption exists that defendant contemplated the consequences that resulted from the act of striking the complainant, if, indeed, the loss of the eye did in fact result from the blow given.

The most that could in any case be presumed would be that defendant contemplated the *probable* consequences that would result from his act. Can it be fairly claimed that the *probable* consequence of a blow delivered by a party in a sudden affray or combat would be the destruction of an eye?

Again, conceding that defendant believed that a blow, similar to the one delivered by him, *might* have the effect of destroying the eye, yet an examination of the testimony will fail to disclose or establish the fact that, when defendant struck the blow, he intended or contemplated any specific injury to any part or organ, and certainly not to the eye.

"In estimating the prisoner's real intention, it is obviously of importance to consider the nature of the instrument used, and the part of the body on which the wound was inflicted, according to the plain and fundamental rule that a man's motives and intentions are to be inferred from the means which he uses, and the acts which he does." 2 Starkie, Evidence, 691.

The essential element of the crime of mayhem, is an intent to maim or disfigure. The mere fact of maiming or disfigurement raises no presumption of an intent to maim or disfigure,

but proof of a specific design to maim or disfigure must be adduced.

We insist that to warrant a conviction in this case the jury should have been instructed that they must be satisfied from the evidence in the case that defendant, at some time before the actual infliction of the alleged injury, had formed a specific design to maim or disfigure the complainant.    1 Russ. Cr. 735.

We concede that the claim that defendant intended to inflict some injury upon Kemble would be sustained by proof of the fact that he struck him, but we deny that mere proof of striking—even to the extent claimed by the prosecution—warrants a presumption that defendant intended the specific injury that resulted.

Such specific injury would not be the natural result of the act of striking.    *State* v. *Bloedow*, 45 Wis. 279, 1 Whart. Cr. Law, 170.

The language of section 5348, R. S., "with intent to maim," etc., is synonymous with the words, "premeditated design." *Foster* v. *People*, 50 N. Y. 598; *Godfrey* v. *People*, 63 N. Y. 207.

*John E. Carland*, U. S. Atty.

The assignments with reference to the evidence showing no premeditation and the refusal of the court to instruct as to it, may be considered together, as they involve the same question, —whether by the terms of the statute on which this indictment is found there must be a premeditated design to inflict the particular injury charged against the defendant in order to constitute the crime.    Although mayhem was a crime at common law, it must be conceded that the statute in question contains a full definition of the crime therein denounced, and, so far as crimes against the United States are concerned, it must be taken as a definition of the crime of mayhem in the same manner that the statute of 22 & 23 Charles II. C. I., commonly called the "Coventry Act," was considered to have defined what had theretofore been, and thereafter should be, mayhem.    The last-named act recites that on the 21st of December, 1670, "a

violent and inhuman attempt was made upon the person of Sir John Coventry, * * * and upon the person of his servant, William Wylkes, by a considerable number of armed men." The act then goes on and outlaws the persons indicted for the offense, which seems to have been robbery, and then enacts that it shall be felony, without benefit of clergy, "of *malice aforethought*, and by *lying in wait*, to unlawfully cut out or disable the tongue, put out an eye, slit the nose, or cut off or disable any limb or member of any subject of his majesty, with intention in so doing to maim or disfigure in any of the manners before mentioned such, his majesty's subject." 2 Bl. Com. (Cooley's Ed.) 206.

This act remained in force until it was repealed and re-enacted by 9 Geo. 4, c. 31, (1828,) which was itself repealed and re-enacted by 24 & 25 Vict. c. 100, (1861,) which is still in force.     The law in regard to mayhem in the last-mentioned act appears therein as section 18, and, so far as mayhem is concerned, is as follows :

"Whosoever shall *unlawfully and maliciously*, by any means whatsoever, wound or cause any grievous bodily harm to any person, or shoot at any person, or by drawing a trigger, or in any other manner, attempt to discharge any kind of loaded arms at any person, with intent in any of the cases aforesaid to maim, disfigure, or disable any person," etc., "shall," etc.

By section 13 of the act of congress approved April 30, 1790, it is provided that if any person or persons within the places therein mentioned, "*on purpose and of malice aforethought* shall unlawfully cut off the ear or ears, or cut out or disable the tongue, put out an eye, slit the nose, cut off the nose or a lip, or cut off or disable any limb or member of any person, with intention in so doing to maim or disfigure such person in any of the manners before mentioned, shall," etc.     1 St. at Large, p. 115.

This statute continued to be the law on the subject until the statutes of the United States were revised in 1873, when the foregoing section was revised and amended, and now appears

as section 5348, U. S. R. S., upon which the indictment in this action was found. The crime defined by the section last mentioned is exactly the same as in the act of 1790, with the exception that the words "on purpose and of malice afore-thought" are eliminated from the law, and the word "mali-ciously" substituted. Is it not, then, an inevitable conclusion that the legislative authority of England and the United States intended and did so change the law as to eliminate from it the necessity of proving a premeditated design to inflict the particular injury charged? The word "maliciously" as used in criminal statutes of the kind under consideration, means nothing more than that the act was done voluntarily, intentionally, and without justifiable or excusable cause. The import of the words "malice" and "maliciously" is declared by section 772, Penal Code of Dakota, to be "a wish to vex, annoy, or injure another person, established by proof or presumption of law." In the case of *State* v. *Bloedow*, 45 Wis. 280, cited by counsel for plaintiff in error, it is said: "If, as has happened to the disgrace of humanity, one engaged in a fight gouge out his adversary's eye, the act, unexplained by circumstances, may be sufficient proof of the malicious intent to maim." In the case of *Godfrey* v. *People*, 63 N. Y. 207, cited by counsel as supporting his theory, the indictment was found on a statute of New York in the following words: "Every person who from *premeditated design, evinced by lying in wait for the purpose*, shall," etc., "or disable any limb or member of another on purpose." 2 Rev. St. 664, § 27.

It is not difficult to account for a decision on that statute holding that a premeditated design must exist in order to complete the offense. The above section is not now the law of New York. The law now stands as follows: "A person who willfully, with intent to commit a felony, or to injure, disfigure, or disable, shall." Under this statute the intent may be presumed from the infliction of the injury. *State* v. *Hair*, 34 N. W. Rep. 893; *State* v. *Jones*, 70 Iowa, 505, 30 N. W. Rep. 750; *Davis* v. *State*, 2 S. W. Rep. 630.

There was sufficient evidence to go to the jury on the question of intent, and they have found that it existed. If the defendant intentionally put out the eye of Kemble, and the jury find that he did, then it follows that he did it with intent to maim or disfigure; for no one will claim that, if a person intentionally puts out the eye of another, he did not intend to maim or disfigure. *State* v. *Clark*, 69 Iowa, 537, 28 N. W. Rep. 537; *State* v. *Simmons*, 3 Ala. 497.

The statute on which the indictment is found defines the crime therein denounced fully, and the indictment, having used its language, is sufficient. *State* v. *Briley*, 8 Port. (Ala.) 491.

THOMAS, J. The plaintiff in error, Herman Gunther, was indicted at a term of the district court of the Sixth judicial district of the territory of Dakota, having and exercising the jurisdiction of the circuit and district courts of the United States, held at Bismarck in March, 1887, for having, on the 26th day of October, 1886, at the military post of Fort Yates, maliciously put out the left eye of one Edmund Kemble, with intent to maim and disfigure him, (the said Kemble.)

The defendant entered a plea to this indictment of not guilty, and at a term of the United States district court held at Bismarck in September, 1887, the cause came on for trial, and resulted in a verdict of guilty. In due time a motion was made for a new trial, which was overruled. Defendant then moved in arrest of judgment, which motion was also denied, and judgment was thereupon pronounced by the court. The case is here on writ of error, and defendant asks that the judgment of the said district court be reversed for the following reasons, to-wit:

1. The judgment ought to be reversed because the court refused to charge the jury that, in order to convict, they must find that the defendant at the time he inflicted the injury charged in the indictment had a premeditated design or intent to put out the eye of said Kemble, with intent to maim and disfigure him.

2. The judgment ought to be reversed because there was no evidence introduced at the trial tending to show premeditated

design on the part of the defendant to put out the eye of said Kemble, with intent to maim and disfigure him.

3. The judgment should be reversed because the indictment did not state that by reason and means of the facts therein alleged said Kemble was maimed and disfigured.

It will be observed that assignments of error 1 and 2 virtually raise the same issue, and we shall therefore consider them together.

The question presented by them for consideration is whether, by the terms of the United States statute on which the indictment in this case is based, it is necessary to prove premeditated design in order to establish the crime of mayhem as it is defined in said statute.

That such would have been the case at common law, or under the statute of 22 and 23 Charles II., commonly known as the "Coventry Act," there can be no doubt, because by the terms of said statute premeditated design in the infliction of such an injury is made the essence of the crime.   2 Bl. Comm. (Cooley's Ed.) 206.   This statute, with some immaterial modifications, was adopted by the congress of the United States April 30, 1790, and continued in force until the revision of the United States Statutes in 1873, when it was materially amended.

By section 13 of the act of 1790 it was provided that if any person or persons within the places therein mentioned, "*on purpose and of malice aforethought*, shall unlawfully cut off the ear or ears, or cut out or disable the tongue, put out an eye, slit the nose, cut off the nose, or lip, or cut off or disable any limb or member of any person, with intention in so doing to main or disfigure such person, in any of the manners before mentioned, shall," etc.   1 St. at Large, p. 115.

In the revision of this statute in 1873, (section 5348, Rev. St. U. S.,) under which the indictment was found, the words "*on purpose and of malice aforethought*" were eliminated, and the word "maliciously" substituted.

It seems evident that congress in amending this act by expunging the words "on purpose and of malice aforethought,"

and inserting in their stead the word "maliciously," intended to change the *gravamen* of this offense, and that it should no longer be necessary to establish premeditated design in order to constitute this crime.

The word "maliciously," as used in criminal statutes of similar import to the one under consideration, in our judgment means nothing more than that the act should be done voluntarily, intentionally, unlawfully, and without excuse or justification, and, if committed in this manner, would most certainly constitute the offense of mayhem within the meaning of this statute.

It is therefore, in our judgment, wholly immaterial whether it was done with premeditated design or not.

Hence we conclude that the judge of the district court properly refused to charge the jury that they must so find in order to convict the defendant; and it therefore follows, as a matter of course, that it was also immaterial whether there was any evidence at the trial tending to show this fact.

The question of malice is one for the jury, and may be inferred or established by the circumstances under which the injury was inflicted, and may be formed previous to or at the time the act was done.

In order for the jury to return a verdict of guilty, they should have found from the evidence three facts:

1. That the defendant did put out the eye of said Kemble.

2. That it was done maliciously.

3. Done with intent to maim and disfigure him. *State* v. *Hair*, 34 N. W. Rep. 893; *State* v. *Jones*, 70 Iowa, 505, 30 N. W. Rep. 750; *Davis* v. *State*, 22 Tex. App. 45, 2 S. W. Rep. 630.

If there were any evidence introduced at the trial substantially tending to prove these facts, or from which the jury would be justified in inferring them, the verdict cannot be said to be erroneous.

In the case of *State* v. *Bloedow*, 44 Wis. 280, cited by counsel for plaintiff in error, the court say: "If, as has happened, to the disgrace of humanity, one engaged in a fight gouge out

his adversary's eye, the act, unexplained by circumstances, may be sufficient proof of the malicious intent to maim."

We concede that there may be cases where a person's eye is put out by an act of another which could not have been expected by any reasonable person to have resulted from such act, and proof of intent to bring about such a result, independent of the commission of the act itself, would be necessary in order to establish the offense; but in the case at bar there are circumstances proven from which it might be reasonably inferred that the defendant not only inflicted the injury maliciously, but with the specific intention to maim and disfigure the person injured. This question having been properly submitted to the jury, under the charge of the court, they having found that these ingredients existed, we cannot reverse the conviction on any of these grounds.    *State* v. *Clark,* 69 Iowa, 196, 28 N. W. Rep. 537; *State* v. *Simmons,* 3 Ala. 497; *Com.* v. *Newell,* 7 Mass. 245.

It is a familiar elementary principle of law that every person is presumed, and must be held, to have intended the natural and probable result of his voluntary acts; and the jury probably, as they had the right to do, took this view of the case in considering all the circumstances surrounding the commission of the offense.

In this case the court instructed the jury that "they must believe from the evidence beyond a reasonable doubt that the defendant at the time of putting out Kemble's eye intended and designed to commit the crime of mayhem by putting out said Kemble's eye, with intent to disfigure and maim him." Having examined carefully the entire charge of the court in this case, we discover no error therein.

The third assignment of error puts in issue the sufficiency of the indictment for the reason that it does not state "that by reason and means of the facts alleged therein said Kemble was maimed and disfigured." The indictment followed the language of the statute, which fully defines and describes the crime therein denounced, and in our judgment is sufficient. The indictment clearly states and charges that the defendant put out the eye of

said Kemble, and that it was done maliciously, and with intent to maim and disfigure him. The proof of these facts would be sufficient to establish the offense, and we cannot see any reason why the indictment should be required to state more. 2 Bish. Crim. Proc. § 856; *State* v. *Briley*, 8 Port. (Ala.) 472; *Tully* v. *People*, 67 N. Y. 15. The judgment is in all things affirmed.

All the justices concurring.