**224 P.2d 151**

### STATE v. TRUJILLO et al.

**No. 5282.**

Supreme Court of New Mexico.

Nov. 17, 1950.

O. Russell Jones, E. P. Ripley, Santa Fe, for appellants.

Joe L. Martinez, Atty. Gen., Hilario Rubio, Asst. Atty. Gen., and Peter N. Chumbris, Asst. Atty. Gen., for appellee.

BRICE, Chief Justice.

The appellants were convicted and sentenced to serve terms in the state penitentiary upon a charge by information that they had committed the "crime of mayhem" in that "said defendants did, with malicious intent to maim or disfigure, destroy the right eye of one Robert Valencia." The basis of this information is the following New Mexico statute: "If any person, with malicious intent to maim or disfigure, shall cut out or maim the tongue, put out or destroy an eye, cut or tear off an ear, cut or slit or mutilate the nose or lip, or cut off or disable a limb or member of any person, or commit any other great bodily injury, every such offender and every such person privy to such intent, who shall be present aiding in the commission of such offense, shall be punished by imprisonment in the state penitentiary not more than five (5) years, nor less than one (1) year, or by fine not exceeding two thousand dollars ($2,000), nor less than one hundred dollars ($100)." Sec. 41-3001, N.M.Sts.1941.

Among the assignment of errors were (1) the verdict of the jury is not supported by the evidence, and (2) the trial court erred in overruling appellants' motion for judgment non obstante veredicto. The effect of the motion is that there is no substantial evidence to support the verdict of the jury; that there was no proof that the defendants or any of them "with malicious intent to maim or disfigure" put out or destroyed Valencia's eye.

There is substantial evidence to prove that Valencia was viciously assaulted by the three defendants, thrown to the ground and kicked in the head and face. Among his injuries from the beating was the loss of his right eye, which apparently was destroyed by a kick delivered by one of the defendants. There is no evi-

dence other than the character and result of the assault, that the defendants or any one of them, intended that specific injury to Valencia.

The argument is that the specific malicious intent to maim or disfigure by destroying Valencia's eye, must have been the purpose and intent of the assault or of the kick that destroyed his eye; that such intended injury to Valencia was accomplished, as maliciously intended, by a kick in the eye delivered by one of the defendants for that purpose; that such intent is a necessary element to the crime of mayhem. Many statutes so provide, but that of New Mexico is different.

The intent that must have been in the defendants' minds at the time they, or one of them, destroyed the sight of Valencia's eye, to constitute the statutory crime of mayhem, was to maim or disfigure him. The word "maim" is not used in any technical sense, nor is the word "disfigure" so used. "Maim" is defined as follows: "To deprive of the use of a limb or member, so as to render a person in fighting less able either to defend himself or to annoy his adversary. To commit mayhem upon. (2) To mutilate or seriously wound or disfigure, especially to cripple or disable. In law, privation of the use of a limb or member of the body; a crippling, a serious physical injury, hence deprivation of something essential. Serious defect or blemish." Websters International Dictionary.

As ordinarily used it means great bodily harm or injury. In construing an exact statute, the Supreme Court of Vermont said: "Our statute on maiming, P.L. 8390, follows the Coventry Act, and reads: 'A person who, with malicious intent to maim or disfigure, cuts out or maims the tongue, puts out or destroys an eye, cuts or tears off an ear, cuts or slits or mutilates the nose or lip, or cuts or disables a limb or member of another person, and a person privy to such intent who is present aiding in the commission of such offense, shall be imprisoned' etc. Under a similar statute in Massachusetts it is held that the word 'maim' is used in the popular sense of mutilating, and not as synonymous with the technical word 'mayhem.' Com. v. Newell, 7 Mass. 245." State v. Deso, 110 Vt. 1, 1 A.2d 710, 714. Also see Com. v. Farrell, 322 Mass. 606, 78 N.E.2d 697; State v. Foster, 281 Mo. 618, 220 S.W. 958; People v. Nunes, 47 Cal.App. 346, 190 P. 486.

At common law mayhem is defined as "being the unlawfully and violently depriving of another of the use of such of his members as may render him less able, in fighting, either to defend himself or annoy his adversary." State v. Martin, 32 N.M. 48, 250 P. 842, 844. But the so-called Coventry Act, 22 & 23 Car. II c. 1,

provides that it is a felony to cut off a nose or lip, or cut off or disable the limb of any person with intent to maim or disfigure. The American statutes follow this act in most particulars, though the statutes differ.

That the defendants intended to inflict serious bodily injury on their victim was substantially proved by their vicious attack, and of this we are satisfied. If we should assume that the statutory crime of mayhem includes a specific intent to do the precise injury inflicted, as defendants contend, (as is the case under some statutes), still, according to the majority rule, the evidence justified the verdict.

Where a specific intent to inflict the particular injury is an element of the offense, courts are not in accord as to the manner of its proof. The majority rule seems to be that the specific intent may be presumed from the commission of the prohibited act, or the text books so state. 57 C.J.S. Mayhem, § 10; 36 A.J. "Mayhem" Sec. 11. The Supreme Court of Illinois, in construing a statute identical in meaning if not in words, so held in People v. Yuskauskas, 268 Ill. 328, 109 N.E. 319; also State v. Foster, supra; U. S. v. Gunther, 5 Dak. 234, 38 N.W. 79. Other courts hold that if the means used is such as would ordinarily result in maiming, the intent may be presumed. Davis v. State, 22 Tex. App. 45, 2 S.W. 630; State v. Crandall, 227 Iowa 311, 288 N.W. 85; Patterson v.

State, 30 Ala.App. 135, 1 So.2d 759. Other courts hold that the intent to do the specific act done must be proved and cannot be presumed. Simpson v. State, 81 Fla. 292, 87 So. 920.

The English courts hold that an injury to constitute mayhem must have been inflicted by some instrument, a doctrine not followed in this country. In Reg. v. Duffill, 1 Cox C.C. 49, it was contended that an injury inflicted by a kick with a boot (the English use the word "boot" as we use shoe), did not come within the definition of mayhem. But the court held that it did, and sustained the conviction.

The defendants assert that the trial court erred in refusing to give to the jury the following requested instruction: "The court instructs the jury that the burden of proof is upon the State to prove the defendants guilty of the crime of mayhem beyond a reasonable doubt, and, if from the evidence produced by both the State and defendants, the State fails to convince you beyond all reasonable doubt that the defendants, Ernesto Trujillo, Gilberto Jaramillo and Ruben Quintana, actually destroyed the right eye of Roberto Valencia, and that such destruction was done by the defendants with malicious intent to so destroy, it is your duty to find the defendants 'not guilty.'"

From what we have hereinbefore stated regarding the law of intent, this requested

instruction is obviously erroneous, and the trial court did not err in refusing to give it to the jury. Proper instructions regarding reasonable doubt, presumption of innocence, and burden of proof were included in the court's general charge. The court then gave to the jury the following instruction:

"The Court instructs the jury that in order to convict the defendants of the crime of mayhem, it is necessary that the State prove each and every element of the crime as defined by the statute, beyond a reasonable doubt, and in the event that the State has failed to do so, it is your duty to acquit the defendants.

"The Court instructs the jury that in order to constitute the crime of mayhem, it is necessary that the State prove, beyond a reasonable doubt, that the right eye of Roberto Valencia was destroyed, and that the defendants destroyed his right eye with malicious intent to maim or disfigure."

To which defendants made no objection.

■ There was no error in refusing the tendered instruction. Those given correctly state the law. They might have been fuller and in more detail if defendants had so requested of the court.

It is assigned that "Fundamental error was committed by the trial court in instructing as to aiding and abetting and in failing to instruct as to the necessity for

a 'sharing of the intent' and a 'community of purpose' or a partnership in the unlawful undertaking".

The giving of no specific instruction is assigned as error, nor did defendants tender correct instructions, if there was in fact any error.

No objection was made in the trial court to the giving of any instruction. The following rule applies: "For the preservation of any error in the charge, objection must be made or exception taken to any instruction given; or, in case of a failure to instruct on any point of law, a correct instruction must be tendered, before retirement of the jury. Reasonable opportunity shall be afforded counsel so to object, except or tender instructions." (Trial Court Rule 70-108) Sec. 42-1117, N.M.Sts.1941.

■ It has been held by this court many times that a party waives errors in instructions to the jury if he fails to object thereto, and to point out error to the trial court, so that it may have an opportunity to correct it. State v. Smith, 51 N.M. 328, 184 P.2d 301; State v. Garcia, 46 N.M. 302, 128 P.2d 459.

■ If there was fundamental error that went to the foundation of defendants' rights we would take cognizance of it and reverse the judgment if necessary to protect such rights. State. v. Garcia, 19 N.

M. 414, 143 P. 1012; but we find none. If appellants desired fuller or more complete instructions on the questions mentioned, they should have requested them of the court.

The defendants have filed in this court a motion for a new trial upon the ground of newly discovered evidence. It is the general rule, in the absence of a statute authorizing such procedure by an appellate court, that it will not assume the authority. There are statutes in Maine, New Jersey, New York, Rhode Island and Vermont providing for such proceedings, but in the absence of a statute the only state, so far as we have been able to discover, whose supreme court remands for new trials on such motions is North Carolina. Byrd v. Gloucester Lumber Co., 207 N.C. 253, 176 S.E. 572. Regarding this kind of procedure this court said in State v. Mersfelder, 34 N.M. 465, 284 P. 113, 115: "The present motion amounts to a motion for new trial made originally in this court. It is not our function to hear such motions. Ortega v. Ortega, 33 N.M. 605, 273 P. 925. If under any circumstances we should assume the power, it must be upon a showing of necessity and of the impossibility of securing the relief in the regular course. This is not such a case. The principles thus well established are dictated by sound public policy, and by a due regard to the distinct functions of court and jury, of trial and appellate courts, and of the dis-tinction between preserving and enforcing the legal rights of an accused person, and extending clemency to him. To deviate from these principles would open the door to abuse. We need not, and do not now, hold that these principles can in no case be relaxed. We are constrained to hold that they cannot be yielded upon the present showing."

The basis of this motion is newly discovered evidence. It is supported by an affidavit which is substantially as follows:

Subsequent to the trial of the defendants in the district court, a civil action for damages was brought against defendants by Valencia to recover for the injury done to his eye. The civil suit was tried on July 20, 1950. It is asserted that the testimony of Valencia and Dr. Herman Renkoff, both of whom were witnesses in the present case and in the civil suit, contained material differences in the civil suit from their testimony in the trial of this case, all as shown more specifically by an affidavit attached to the motion. The evidence was not known to the defendants at the time of the trial, and could not have been known or produced by any diligence on their part.

Insofar as the evidence of Valencia is concerned, we see very little difference in its effect as given in the two cases. It was something like fifteen months after the injury that he gave his testimony in the civil

case, and it should be expected that his memory might not be as clear as it was at the time of the trial of this case. The difference is in collateral matters, not in the fact that he was kicked in the eye.

Dr. Renkoff testified at the trial of this case, as stated in the brief, that he believed the injury sustained was permanent blindness that could have been caused by a kick. In the trial of the civil action he testified in substance, as follows:

"I can't say today whether Valencia's sight has been permanently lost. That was my opinion at the time I examined him after his injury. In September after his injury in May there was a cataract that could not have been seen at the first examination because of the hemorrhage. I could not tell how long the cataract had been in existence. There is a possibility that it was in existence in May 1949. The cataract could have contributed toward the fact that Valencia had no vision in his eye in September. Certainly the injury alone could have caused the loss of the vision. I can say that it could have, but I don't say that it did."

The testimony of Valencia at the first trial was to the effect that he had perfect vision in this eye and that after the injury he was blind, and it appears from the testimony that he was blind at the time of the civil trial. The evidence is positive that his eye was blinded by the kick he received, and there is nothing to indicate that at that time he had a cataract, and the doctor's testimony throws no light on this fact. If under any circumstances we would grant a motion for a new trial because of newly discovered evidence, there must be stronger reasons for doing so than appear in this motion. People v. Nunes, supra.

The motion to remand the case for a new trial is overruled. The judgment of the district court is affirmed, and it is so ordered.

LUJAN, SADLER, McGHEE and COMPTON, JJ., concur.