225 P.2d 143

**LOVELL et al. v. CITY OF LAS CRUCES.**

No. 5281.

Supreme Court of New Mexico.

Dec. 7, 1950.

E. G. Shannon, J. D. Weir, Las Cruces, for appellant.

W. C. Whatley, W. B. Darden and LaFel Oman, all of Las Cruces, for appellee.

LUJAN, Justice.

This suit was instituted by the plaintiff, a minor, through Velma Lovell, his mother and next friend, against the City of Las Cruces, to recover for personal injuries alleged to have been sustained from an explosion of gas in the bed room of his father's home. The allegations of negligence being: "That said defendant in the laying of the said pipeline from its said main line in the street to the said Bason dwelling used an inferior grade of pipe and the connections of said pipe were negligently made so that there was permitted to escape from such connections and from said pipe under the ground and through the ground to the surface at and against the said dwelling and over a period of what appeared to be a very considerable length of time a large quantity of natural gas; and that the said defendant in the operation and maintenance of its said natural gas system, and particularly the pipe which it had laid from its main line in the street at Mesilla Park up to the said Bason dwelling, negligently and carelessly failed to inspect the said pipeline and to discover that gas was escaping therefrom, and carelessly and negligently allowed the said pipeline to fall into such state of disrepair as to permit the constant escape of gas in such quantity and amount that on the night of November 12, 1948, and early morning of November 13, 1948, gas had escaped therefrom and drifted and floated into the Bason dwell-

ing and accumulated and settled therein to such extent as to create and bring about an extremely dangerous situation."

The answer admits that the defendant owned and operated the gas system and was charged with the duty of maintaining the same at the time mentioned. It admits ownership of the service pipe which connects with its main. It denies that the injury was caused by natural gas or that it was negligent in the installation and maintenance of its gas system, and alleged as a matter of defense that Velma Lovell, plaintiff's mother, carelessly and recklessly used a dangerous inflammable and explosive substance to ignite the fire and that the resultant injuries were caused by her carelessness in doing so.

On the issues thus framed the case was tried by a jury which returned a verdict in favor of the plaintiff and assessed the damages at $7500.00. Judgment thereon was rendered, from which the defendant prosecutes this appeal. The parties will be referred to as they appeared in the lower court.

The defendant owned and operated a natural gas system consisting of mains, pipes, meters and other appliances by which gas was supplied to consumers for domestic and other purposes in Las Cruces, State College and Mesilla Park. One of its mains ran north and south on Linden Avenue in Mesilla Park. A one and one quarter inch coated black wrought iron pipe, one-eighth inch thick and eighty feet long led from the main in an easterly direction through vacant land to a point approximately twelve inches from the western concrete foundation of the two room adobe house occupied by the plaintiff and his parents. At this juncture a riser was connected to the service pipe which formed an "L" some twenty four inches below the ground and extended twenty inches above the surface. The service pipe was installed by the defendant on October 3, 1939, and was at all times under its exclusive management and control. It was never examined or inspected by the defendant after its installation. The pipe was used by the defendant to store its natural gas. The gas was never cut off at the main although there was a cut off valve for that purpose, and at the time of the explosion it was carrying an eighty pound pressure per cubic inch. The plaintiff's house was never piped for natural gas and no meter was ever installed nor gas service rendered by the defendant to the plaintiff. The concrete foundation of the house extended eighteen inches below the ground and six inches above the service pipe. There were two butane gas tanks servicing a neighbor's residence located about fifteen feet from the south wall of the Lovell house. A five gallon drum of kerosene was kept on the outside of the house in front of the porch. One witness testified that he had seen a

five gallon drum of gasoline on the outside of the house close to the porch. Neither of these drums showed signs of fire around them.

On November 13, 1948, at about seven o'clock in the morning Mrs. Velma Lovell, the mother of plaintiff, arose from her bed and went to the heating stove which stood on the south side of the bed room close to the east wall. She raked out the ashes and placed some kindling therein, then went out on the screened porch where she obtained some coal oil which was in a half pint mayonnaise jar, poured it on the kindling, returned the jar to the porch then came back to the room, got a book of matches that were on a small shelf, struck a match on the book when a terrific explosion followed causing the room to fill with blue flames. As a result thereof, the plaintiff, his brother and father were severely burned. The father died within a few hours thereafter.

The defendant has made four assignments of error, the first of which reads as follows: "The trial court erred in overruling appellant's motion for a directed verdict at the close of appellee's case and at the close of the whole case."

There is no merit to this assignment. The evidence shows that the defendant installed the service pipe in question approximately ten years prior to the explosion; that it had complete management and control thereof; but it used the pipe to store its natural gas; that it maintained an eighty pound pressure per cubic inch therein the same as it did in its mains; that the pipe was buried twenty four inches under the ground; that it extended from its main to within twelve inches from the foundation of the Lovell house; that it extended six inches below the concrete foundation; that it never examined or inspected the service pipe during all the time it was in service; that there was a heavy crust over the ground and the soil was adobe where the service pipe was buried; that the soil underneath the flooring of the house at the north room was soft and dried out; that the pipe was loose at the elbow where it formed an "L"; that a hole was discovered in the service pipe; that gas was escaping from the elbow and the hole; that when a match was applied to the pipe where the gas was leaking it would puff up, flare and ignite; that natural gas will diffuse itself along lines of least resistence; that the soil around the service pipe and underneath the floor of the north room was saturated with natural gas; that a strong odor of natural gas was detected both in and outside the house after the explosion; that underneath the floor of the house and on the outside where gas had permeated the soil looked as though it had been put in a furnace and burned; that blue flames were seen licking around the north room a moment after the explosion.

All these and other surrounding facts and circumstances were such as to constitute substantial evidence that the explosion was caused by natural gas which had escaped from the service pipe and diffused itself through the soil to a point underneath the floor from where it found its way into the bed room of the house and there exploded when Velma Lovell struck a match. The court properly denied the motions.

Under assignment of error No. 2, it is urged that the court erred in giving its instruction No. 9 which is not quoted by the defendant. No objection was made in the trial court to the instruction. It has been repeatedly held by this court that a party waives errors in instructions to the jury if he fails to object thereto, and to point out error to the trial court, so that it may have an opportunity to correct the error. State v. Trujillo, 54 N.M. 307, 224 P.2d 151; State v. Smith, 51 N.M. 328, 184 P.2d 301; State v. Garcia, 46 N.M. 302, 128 P.2d 459.

Assignment of error No. 3, reads: "The court erred in failing and refusing to grant appellant's motion to vacate the judgment and for judgment notwithstanding the verdict or for a new trial."

This assignment is likewise without merit. There was sufficient evidence from which the jury could have concluded, as it did, that the explosion was caused by gas escaping from the service pipe and that the defendant was negligent in permitting it to get in such condition that gas would escape. The unusual facts imposed upon it an even greater measure of responsibility than that to which it would thus have been subject had it been furnishing gas to the plaintiff's father. The defendant owned and had complete management and control of the pipe. Its records showed the original installation and the location of the pipe, and, having this information, and knowing that the pipe had remained buried and uncared for during a period of approximately ten years, it should have shut off the gas at the curb or else disconnected the pipe at the main. This pipe had never been used except for storing gas by the defendant and served no useful purpose whatever as far as the plaintiff was concerned for his father was not a consumer of the gas. It was defendant's duty to use reasonable care in its management and to see that the pipe was in good shape and condition, and, for failure to observe this duty it must be held responsible for any resulting injury to the plaintiff.

The rule is stated in a note at 25 A.L.R. 267, as follows: "A gas company not only must see that its pipes and fittings are of such material and workmanship, and are laid in the ground with such skill and care, that gas will not escape therefrom when new, but it must maintain such a system of inspection as will insure reasonable promptness in the detection of leaks that may occur

from the deterioration of the material of the pipes, or from any other cause within the circumspection of men of ordinary skill in the business; and a failure to take such precaution is negligence."

In Brown v. Kansas Natural Gas Co., 8 Cir., 299 F. 463, 466, the court said: "Defendant argues in effect that, as its pipe had been in the ground for 17 years without leaking, it had the right to assume that it would so continue until actual notice of deterioration or leak was brought to its attention. We cannot subscribe to any such doctrine. On the contrary, the evidence made it, after the lapse of such a time, an issue of fact whether defendant was negligent if it failed to discover that its pipe was corroded and rusted, and liable to such leaks as were actually disclosed by the test made after the accident."

A case somewhat similar to the one in question is Castner v. Tacoma Gas & Fuel Co., 123 Wash. 236, 212 P. 283, 284. In that case a dwelling house was demolished by an explosion on January 27, 1921. Gas was installed in the house in 1911. Gas service was discontinued there in May, 1913, at which time the meter was removed. Gas was not ordered or used by the occupants of the house thereafter. In that case the service pipe extended under the ground from the main in the street and was brought to the surface of the ground under the house. The meter bar to which the meter was attached was installed under the corner of the property. When the meter was removed the gas was shut off ahead of the meter standard and not at the curb. In that case the court quoted with approval the rule laid down in Koelsch v. Philadelphia Co., 152 Pa. 355, 25 A. 522, 18 L.R.A. 759, 34 Am.St.Rep. 653, where it said: "While no absolute standard of duty in dealing with such agencies can be prescribed, it is safe to say in general terms that every reasonable precaution suggested by experience and the known dangers of the subject ought to be taken. This would require, in the case of a gas company, not only that its pipes and fittings should be of such material and workmanship, and laid in the ground with such skill and care, as to provide against the escape of gas therefrom when new, but that such system of inspection should be maintained as would insure reasonable promptness in the detection of * * * leaks that might occur from the deterioration of the material of the pipes, or from any other cause within the circumspection of men of ordinary skill in the business."

In that case it was further stated: "A gas company is bound to inspect for discovery of leaks due to defects in material, deterioration of pipes and valves, displacement or dislocation by accident, the weather and the like, because it knows these things often occur."

In the Castner case, the gas company had made no inspection of the pipe after the removal of the meter in 1913. There was a dispute in the evidence as to the ownership and control of the service pipe, but the court held that to be immaterial as the gas company was using the pipe at the time of the accident as a storage place for its product.

■ In the case at bar the defendant was the sole owner of the service pipe; it was under its exclusive management and control; it was used by it exclusively for the storage of its gas; it knew that other leaks had been found in the system between El Paso and Las Cruces; it had never made an inspection of the pipe after it was installed. The court did not err in denying the motions.

Assignment of error No. 4, reads: "The verdict and judgment are unsupported by substantial evidence, and are contrary to the evidence."

The verdict, in our opinion, was amply sustained by the evidence. For instance, by a process of elimination the plaintiff showed that the explosion was not caused by kerosene sprinkled on the kindling in the stove, nor by gasoline or kerosene which was stored in drums outside of the house, nor by butane gas, as it was not possible for it to have come into the house from the tanks in which it was stored some fifteen feet away, but that the explosion was caused by natural gas which escaped from the defendant's service pipe.

Finding no reversible error the judgment will be affirmed. And it is so ordered.

SADLER, McGHEE and COMPTON, JJ., concur.

BRICE, C. J., did not participate.