468 P.2d 421

STATE of New Mexico, Plaintiff-Appellee,

v.

Ernest TURNER, Defendant-Appellant.

No. 360.

Court of Appeals of New Mexico.
Feb. 13, 1970.

Rehearing Denied March 16, 1970.

Certiorari Denied April 14, 1970.

**452**

Charles G. Berry, McAtee, Marchiondo & Michael, Albuquerque, for defendant-appellant.

James A. Maloney, Atty. Gen., Santa Fe, Justin Reid, Asst. Atty. Gen., for plaintiff-appellee.

## OPINION

SPIESS, Chief Judge.

The defendant, Ernest Turner, was charged by an amended indictment with the crimes of aggravated burglary (§ 40A–16–4(C), N.M.S.A. 1953), and aggravated battery (§ 40A–3–5(B), N.M.S.A. 1953; now amended, see 1969 pocket supplement to Vol. 6, N.M.S.A. 1953). Trial by a jury resulted in verdicts of guilty as to both charges. This appeal is from the judgment on the verdicts.

A number of points are relied upon for reversal. Point I, together with a subpoint (a), in substance assert error on the part of the trial court in refusing to quash Count I of the initial indictment, and in refusing to quash Count II of the amended indictment. It is also urged that the trial court erred in allowing the state to file an amended indictment.

The initial indictment with respect to Count I accused defendant of aggravated burglary contrary to § 40A–16–4(C), supra. Further, under this count it is charged that "* * * Ernest Turner did without authority or permission enter a dwelling, to-wit: [sic] the residence of Francine Skidmore, 308 Morningside Dr., Apt. 208, Albuquerque, New Mexico, and after said entry the said Ernest Turner did commit battery upon the person of Francine Skidmore."

Count II of the amended indictment accused defendant of aggravated battery contrary to § 40A–3–5(B), supra. Under this count it is alleged that "* * * Ernest Turner did unlawfully touch or apply force to the person of Francine Skidmore with a deadly weapon, towit: [sic] a hard blunt, unknown object in a manner whereby great bodily harm or death could be inflicted."

It is argued that neither of these counts charge a crime. The reasons given are that Count I of the initial indictment fails to allege an entry with intent to commit any felony or theft therein, and Count II of the amended indictment fails to charge intent to injure. Intent, it is argued, is an essential ingredient as to each crime and in the absence of an allegation of intent the crime was not charged.

The language of the statute upon which the indictments were based is material to a

consideration of this point. Section 40A–16–4(C), supra, states:

"Aggravated burglary consists of the unauthorized entry of any \* \* \* dwelling \* \* \* with intent to commit any felony or theft therein and the person \* \* \*

"C. commits a battery upon any person while in such place, or in entering or leaving such place."

With respect to aggravated battery, § 40A–3–5(B), supra, provides:

"Aggravated battery consists of the unlawful touching or application of force to the person of another with intent to injure that person or another and which \* \* \*

"B. is done with a deadly weapon, or in any manner whereby great bodily harm or death can be inflicted."

In charging each offense the initial indictment and amended indictment employed the name given the offense by statute and specifically referred to the section and subsection of the statute which created the offense. The controlling law is expressed by § 41–6–7, N.M.S.A. 1953:

"(1) The indictment or information may charge, and is valid and sufficient if it charges, the offense for which the defendant is being prosecuted in one [1] or more of the following ways:

"(a) By using the name given to the offense by the common law or by a statute.

"(b) By stating so much of the definition of the offense, either in terms of the common law or of the statute defining the offense or in terms of substantially the same meaning, as is sufficient to give the court and the defendant notice of what offense is intended to be charged.

"(2) The indictment or information may refer to a section or subsection of any statute creating the offense charged therein, and in determining the validity or sufficiency of such indictment or information regard shall be had to such reference."

In our opinion, Count I of the initial indictment and Count II of the amended indictment are clearly sufficient under the statute which we have quoted. See State v. Campos, 79 N.M. 611, 447 P.2d 20 (1968) ; State v. Jones, 73 N.M. 459, 389 P.2d 398 (1964) ; State v. Lott, 73 N.M. 280, 387 P.2d 855 (1963) ; State v. Cummings, 63 N.M. 337, 319 P.2d 946 (1957) ; State v. Lucero, 79 N.M. 131, 440 P.2d 806 (Ct. App.1968).

In State v. Lott, supra, the Supreme Court considering the effect of this statute, said:

"The purpose of a criminal information is to furnish the accused with such a description of the charge against him as will enable him to make a defense and to make his conviction or acquittal res judicata against a subsequent prosecution for the same offense, and to give the court reasonable information as to the nature and character of the crime charged. Ex parte Williams, 58 N.M. 37, 265 P.2d 359; State v. Roy, 40 N.M. 397, 60 P.2d 646, 110 A.L.R. 1. The information did specifically charge the defendant with being an habitual criminal under the provisions of § 41–16–3, supra. Regard must be given to such reference to the statute in determining the sufficiency of an information. Section 41–6–7(2), N.M.S.A. 1963; State v. Shroyer, 49 N.M. 196, 160 P.2d 444; Ex parte Williams, supra. C. f. State v. Ardovino, 55 N.M. 161, 228 P.2d 947. And, identification of the crime charged by reference to the section of the statute creating it was said in State v. Cummings, 63 N.M. 337, 319 P.2d 946, to be sufficient. Furthermore, the defendant may ask for and is entitled to a bill of particulars if he contends that the information is insufficient to enable him to prepare his defense or to give him any information to which he is entitled under the Constitution. A defendant failing, as here, to request a bill of particulars, if he deems the information insufficient, will not be heard on appeal to complain of a deficiency in the information. State v. Roy, supra. In addition, it is neither

argued nor shown that defendant was prejudiced in his defense by the omission."

We consider it appropriate here to say that defendant did not request a bill of particulars, nor has prejudice been argued or shown by reason of the omissions which he asserts render the counts insufficient to charge the crimes. Defendant cites the following cases as supporting authority: State v. Ocanas, 61 N.M. 484, 303 P.2d 390 (1956); State v. Ferguson, 56 N.M. 398, 244 P.2d 783 (1952); State v. Ardovino, 55 N.M. 161, 228 P.2d 947 (1951); State v. Trujillo, 54 N.M. 307, 224 P.2d 151 (1950); State v. Grubaugh, 54 N.M. 272, 221 P.2d 1055 (1950); State v. Valdez, 51 N.M. 393, 185 P.2d 977 (1947); Territory v. McGrath, 16 N.M. 202, 114 P. 364 (1911); State v. Ortega, 79 N.M. 707, 448 P.2d 813 (Ct. App.1968); State v. Hinojos, 78 N.M. 32, 427 P.2d 683 (Ct.App.1967).

In our view, none of these cases lend support to defendant's position. Territory v. McGrath, supra, was decided before the adoption of § 41–6–7, supra. *Ortega* involved simply a question as to the sufficiency of evidence to support the charge; *Hinojos* involved the sufficiency of evidence to support the charge of burglary. *Trujillo* considered the sufficiency of evidence to support the verdict, and the propriety of a particular instruction and in addition, consideration was given to a motion for a new trial based upon newly discovered evidence. *Ocanas* dealt with the admission of evidence of prior convictions, the sufficiency of evidence to sustain the charge involved and a particular instruction. *Grubaugh* involved failure of proof of the crime charged and like the above cases did not relate to the sufficiency of an indictment or information.

While *Valdez* and *Ardovino* were both related to the sufficiency of an information, there is no indication that the information in either case made reference to the offense by name. Further, the information in *Valdez,* as in *Ardovino,* did not refer to the section of the statute creating the offense. In *Ferguson* the section number of the stat-

ute creating the offense sought to be charged was endorsed upon the back of the information. The text of the information itself failed to state facts sufficient to charge a crime. The court declined to hold that the endorsement of the section number creating the offense on the back of the information adequately charged the offense.

By subpoint A defendant asserts that "[t]he court committed reversible error by allowing the prosecution to file the amended indictment."

Section 41–6–37, N.M.S.A. 1953, permits the amendment of indictments which charge an offense by providing that:

"(1) No indictment or information that charges an offense in accordance with the provisions of section 42–607 [41–6–7] shall be invalid or insufficient because of any defect or imperfection in, or omission of, any matter of form only, or because of any miswriting, misspelling or improper English, or because of the use of sign, symbol, figure or abbreviation, or because of any similar defect, imperfection or omission. The court may at any time cause the indictment, information or bill of particulars to be amended in respect to any such defect, imperfection or omission."

 Defendant's argument appears to be based upon the proposition that the initial indictment failed to charge the particular offenses and consequently was not subject to amendment. In our opinion, as we have stated, the initial indictment did charge the offenses. Consequently, we do not consider the permission to amend as erroneous. Furthermore, the amended indictment tended to more clearly state the offenses charged by the initial indictment. Village of Deming v. Marquez, 74 N.M. 747, 398 P.2d 266 (1965).

Defendant's Point II, together with his Points V and VI predicate error on permitting the prosecutor, when he cross-examined certain expert witnesses, to propound questions relating to collateral charges of crime against defendant and in refusing to suppress testimony relating to a collateral offense.

It appears that the defendant was charged by separate indictments or informations with committing some five crimes, including the charges which are the subject of this appeal. All of the alleged crimes were similar. Charges other than those directly involved here related to offenses claimed to have been committed upon a Barbara Ross, Carolyn Corgan and a Peggy Ann Bowen. Defendant denied all of the charges, and in an effort to establish evidence of the truth of his denials proposed a stipulation which was joined by the prosecution and defendant under which it was agreed that the defendant would submit to certain deception tests; namely, polygraph, sodium amytol and hypnosis. The tests were to be conducted by specifically named experts. The experts were to be furnished with information relating to each of the charges for consideration in reaching their opinion, including information obtained from the victims in respect to their identification of the defendant as the assailant.

Following the completion of tests by the experts it was stipulated that they would testify and express their opinions as to whether defendant's denial of the charges was truthful. The portion of the stipulation which we consider material follows:

"It is further agreed and stipulated that the results of the hypnotic examination in the form of an opinion by the said doctors may be offered in evidence on behalf of the Defendant or on behalf of the State in any of the above entitled cases. In presenting their opinions, the doctors may explain to the Court and Jury the methods used in such examination procedures, the nature of such tests, and state the results which form the basis of their opinion that the Defendant did or did not participate in the alleged crimes.

"If the examination results and the opinions of the said doctors are offered in evidence by either party to this agreement and stipulation, the opposing party shall have the right to cross examine the Examiner with respect to the manner in which he conducted the examination, his own training and experience, and also regarding the psychiatric technique and its limitations, or to produce any evidence or testimony regarding the validity or reliability of such hypnotic examination.

"If trial by jury, the Court shall be requested to instruct the jury regarding the terms of this agreement and stipulation. Also, the Court shall be requested to instruct the jury that they should not accept the test results and the Examiner's opinion as conclusive of the issue before them, but they are privileged to consider the results and the Examiner's opinion along with all the other evidence in the case and to give the hypnotic examination whatever weight and effect they think it reasonably deserves."

At the trial the testimony of the experts was offered by defendant in support of his denial of guilt. This testimony included a description of the tests given together with the results as interpreted by the experts. Each expert testified that in his opinion the defendant was telling the truth when he denied the charges.

Upon cross-examination and over objection, the prosecutor was permitted to ask the experts, except the polygraph examiner, whether prior to conducting the tests they were each informed that on the same night complainant in the case on trial had been attacked, a woman by the name of Ross had also been attacked and had identified defendant as her assailant. Questions were also asked, over objection, as to whether the experts were informed of another incident in which a young girl was raped and identified defendant as the person who had committed the crime.

Like questions were asked as to a third incident involving another victim where it appeared that fingerprints alleged to be those of defendant were found in the victim's apartment.

In view of the novel procedure followed in this case we see no error in

permitting the questions. These criminal charges, in addition to those involved in the trial upon which this appeal is based, were all jointly considered by the experts. The facts given the experts and upon which their opinions were to be based included the identification of defendant in the instances mentioned by the prosecutor in his questions on cross-examination.

On direct examination of the experts only matters relating strictly to the case on trial were covered. No reference was made to the other incidents, nor was it indicated that the experts considered the fact that identifying evidence had been submitted to them.

The jury, in determining the weight to be given the expert opinions, was entitled to know the facts upon which the opinions were based, including all facts of a pertinent nature which were before the experts and which they could have considered in arriving at their conclusions.

In testing the expert opinion, the cross-examiner may ascertain whether all facts presented to the expert, although of a collateral nature, were considered by him. Dani v. United States, 173 A.2d 736 (D.C. Mun.App.1961); People v. Parks, 263 Cal. App.2d 490, 69 Cal.Rptr. 368 (1968). Compare State v. Clarkson, 58 N.M. 56, 265 P.2d 670 (1954); Elsea v. Broome Furniture Co., 47 N.M. 356, 143 P.2d 572 (1943).

In our opinion, the procedure followed in securing expert testimony as to the truthfulness of defendant's denials opened the door to the questions relating to the collateral crimes.

Defendant further contends that error was committed in asking the expert witnesses hypothetical questions upon cross-examination which had no factual basis in the evidence. The defendant's reference here is to the questions to which we have referred and which related to collateral offenses. These questions were not hypothetical as defendant contends, but involved material of a factual nature which was supplied to the experts for consideration in arriving at their opinions.

We next consider the refusal of the trial court to suppress testimony relating to a particular collateral offense. A defense asserted at the trial through defendant's testimony was that of alibi. Identity became a material issue in the case.

On rebuttal the testimony of Miss Ross was admitted over objection. Her testimony disclosed an assault upon her the same night and in the same vicinity as the assault which is the subject of the trial in question here. Miss Ross identified defendant as her assailant. A witness corroborating Miss Ross' testimony was likewise admitted in evidence. The testimony was offered upon the issue of identity and for such purpose was admissible as an exception to the rule prohibiting evidence of collateral offenses. State v. Garcia, 80 N.M. 21, 450 P.2d 621 (1969); State v. Lopez, 80 N.M. 599, 458 P.2d 851 (Ct.App. 1969).

In State v. Gutierrez, 79 N.M. 732, 449 P.2d 334 (Ct.App.1968), we said:

"* * * One of the issues which the state had the burden of establishing was the identity of the accused as one of the four persons who perpetrated the offense.

"Admittedly, reference to other offenses during the course of trial is error, unless such evidence is received for one of the purposes recognized as exceptions to the general rule.

"One of the exceptions recognizing the admissibility of evidence of other crimes is that which serves to establish the identity of the person charged and who is on trial. State v. Lord, 42 N.M. 638, 84 P. 2d 80 (1938); State v. Roy, 40 N.M. 397, 60 P.2d 646, 110 A.L.R. 1 (1936). The testimony of the former assault assisted in establishing identity of appellant as a member of a group. The matter of identity was of crucial importance because alibi was injected as a defense."

The defendant, by a separate point, questions the sufficiency of the evidence to establish the charge of aggravated battery.

The crime is defined by § 40A–3–5(B), supra.

Miss Skidmore testified that she was hit on the head three times with an object which she described as "very hard." It appears from the record that following the attack Miss Skidmore was taken to the hospital and six stitches were required to close the wound on her head. This evidence, in our opinion, sufficiently established an aggravated battery under the statute.

Defendant further contends that the trial court erred in denying his motion to strike a non-responsive answer on cross-examination of Miss Skidmore. The record discloses the following testimony, together with the motion to strike and the ruling thereon.

"Q. And then when you were on the couch, what was he saying to you?

"A. He told me that I knew what he was there for, that if I didn't give in and shut up, he was going to kill me.

"Q. Well, he did not say anything to the effect that he was going to rape you?

"A. Not exactly in those words. I can't remember exactly what he said.

"Q. You really don't know what he said, except that he said that he was going to kill you?

"A. I got the impression that he intended to rape me.

"MR. BERRY: If the Court please, I object to the answer, and move that it be stricken as not responsive.

"THE COURT: Overruled."

We take it the purpose of the objection was to prevent the jury from considering the conclusion of the witness. The same conclusion was expressed by the witness upon direct examination without objection; her conclusion, consequently, was before the jury and refusal to exclude it on cross-examination was not prejudicial. Further, it appears to us that Miss Skidmore's answer might reasonably have been expected from the questions asked, and would not properly be the subject of a motion to strike.

Defendant challenges the admission of evidence of a lineup contending that such evidence was inadmissible, cumulative and prejudicial. The defendant had filed a motion to suppress the testimony relating to the identification of the defendant in a lineup, which motion was denied. The testimony relating to the lineup, in our opinion, was properly admitted by the trial court since identification was a material issue in the case.

Miss Skidmore's identification of the defendant at the lineup, together with her identification of defendant at the time of the assault, and again in the courtroom, were each elements of essential proof and were non-cumulative.

Defendant has likewise objected to the admission in evidence of certain diagrams prepared by a police officer. These diagrams were prepared to show the Albuquerque location where a police officer had seen and talked to the defendant the night the alleged crime was committed. We do not consider the admission of the diagram, if erroneous, to have been prejudicial, nor do we consider State v. Costales, 37 N.M. 115, 19 P.2d 189 (1933), upon which defendant relies, as supporting authority for his position.

It is further urged that the trial court erred in admitting into evidence clothing defendant turned over to investigating officers at their request. A police officer who had investigated the crime testified that the day after the commission of the crime he went to defendant's house and asked that defendant give him the clothing he was wearing the previous night. In response the defendant gave the officer certain clothing. The clothing given the officer, however, was not the same color as the clothing the witness Skidmore had testified defendant was wearing when he attacked her. The clothing was admitted in evidence over defendant's objection. We see no basis on which it can properly be said that the admission of the clothing was prejudicial to defendant, in fact it appears to

us that admitting the clothing tended to aid defendant in his defense.

 It is further contended that the trial court erred in making an unnecessary comment in the jury's presence which tended to portray defense counsel in a questionable light. It appears that during the cross-examination of one of defendant's expert witnesses, objection, apparently believed by the court to be contrary to an agreement which had theretofore existed between counsel and the court, was interposed by defendant. The court said: "I now get into a quandary, because I think Mr. Berry [defense counsel] has changed what we agreed to last Friday." Defendant's counsel then objected, saying:

"If the Court please, may I object to the Court's statement about what the Court feels that I have done, I would like to discuss this in the absence of the jury, and qualify any misunderstanding, because I feel that the Court's statement is prejudicial to my client, and is letting the jury feel that I have done something deceptive."

The court then expressly stated:

"There is nothing deceptive, but we just didn't reach a meeting of the minds."

Considering the statement made by the court we do not think defendant's counsel was portrayed in a questionable light.

We find no error in these remarks.

 The denial of a motion to suppress certain conversations between defendant and a police officer are likewise the subject of objection. These conversations were wholly unrelated to any charges filed against defendant and did not in any respect tend to incriminate him. It appears that defendant had stopped his automobile at an intersection. The officers approached his car and asked to see his driver's license. The record disclosed the following testimony:

"Q. What if anything did Mr. Turner say concerning his presence in that location?

"A. Upon talking to Mr. Turner, he produced a driver's license permit which I checked. It was valid. I asked him where he was going, and he advised me that he was enroute home to Kirtland Field Addition, where he now lives."

The record also discloses a conversation between defendant and another officer at the same time. Nothing in this conversation tends in any way to incriminate defendant. No prejudice is indicated by defendant resulting from the admission in evidence of the conversations. Defendant has asserted that the denial of the motion to suppress the conversations is in contravention of one of the rules set forth in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). We see no basis for such contention.

By Point XI defendant asserts:

"THE TRIAL COURT ERRED IN SUBMITTING THE CASE TO THE JURY BECAUSE THE TESTIMONY AT TRIAL CLEARLY INDICATED THAT THE STANDARD OF PROOF REQUIRED FOR CONVICTION IN A CRIMINAL CASE HAD NOT BEEN ESTABLISHED."

 Defendant's argument appears to be that in view of the opinions uniformly expressed by the experts supporting defendant's denial of guilt the trial court should have determined as a matter of law that a reasonable doubt as to his guilt was present and a verdict in his favor should have been directed. Defendant is correct in stating that based on the deception tests, the experts considered defendant truthful in his denial. In our opinion, although the experts did so testify, the testimony of Miss Skidmore, the complaining witness who identified defendant as the person who attacked her, presented an issue of fact for the jury. Further, the weight to be given expert testimony was a matter for the jury to determine. State v. Smith, 80 N.M. 126, 452 P.2d 195 (Ct.App.1969). We see no error in the denial of defendant's motions for a directed verdict.

■ Defendant's final point is that "[t]he trial court committed reversible error by refusing to instruct the jury as requested by defendant." It is argued under this point that the element of intent to injure was omitted by the court in instructing the jury as to the essential elements of proof under Count II. Defendant does concede that subsequent instructions supplied the omission. Error, if any, was consequently cured. State v. Fields, 74 N.M. 559, 395 P.2d 908 (1964).

■ Further, under this point, defendant asserts the trial court erred in refusing to give two requested instructions. The first of these states that the testimony of the witnesses, Ross and Carter, is irrelevant to the issues in the case and the jury is not to consider this evidence in their deliberations. Based upon our determination that the evidence of Ross and Carter was material on the issue of identity, we consider the proposed instructions properly refused.

■ The next requested instruction the court refused to give and asserted to be error directed the jury to entirely disregard questions asked of the expert witnesses relating to the identification of defendant as the perpetrator of other offenses. These questions, it will be recalled, were asked for the purpose of aiding the jury in weighing the opinions of the experts and we held the same to be proper. The refusal of the trial court to give this requested instruction we likewise consider to have been proper.

■ It is last contended that an instruction relating to the credibility of the testimony of the defendant "had the effect of prejudicing the defendant because calling the jury's particular attention to him." Further, it is contended that the instruction was in effect "a comment upon the credibility of the defendant as a witness." The instruction complained of follows:

"The defendant is a competent witness in his own behalf, and when he testified as a witness in this case he became as any other witness, and his credibility is to be tested by and is subject to the same tests as are legally applied to any other witness; and in determining the weight that should be accorded to the testimony of the defendant the jury have a right to take into consideration the fact that he is interested in the result of the prosecution, as well as his demeanor and conduct on the witness stand."

This instruction does not, as defendant contends, have the effect of prejudicing him by calling the jury's particular attention to him. The instruction only told the jury that defendant was a competent witness in his own behalf and laid down the rule by which such testimony is to be weighed.

We note that through a further instruction the same test was applied as to other witnesses. See Territory v. Livingston, 13 N.M. 318, 84 P. 1021 (1906); Territory v. Gonzales, 11 N.M. 301, 68 P. 925 (1902). We see nothing in the language of this instruction which can be construed as a comment on the credibility of the defendant as a witness.

We have considered all authorities cited by defendant in support of the various points contained in his brief. They do not, however, in our opinion, warrant conclusions different than herein expressed.

The judgment in our opinion should be affirmed.

It is so ordered.

OMAN and HENDLEY, JJ., concur.